## BELLAMY BRADLEY & McMAKIN v. DOUD.

1. RIGHTS OF MORTGAGEE OF PERSONAL PROPERTY. The right of the mortgagee of personal property to take and retain the possession of the same ceases when the debt secured by the mortgage is wholly discharged.
2. VERDICT AGAINST EVIDENCE. A judgment will be reversed on the ground that the verdict was against the evidence only in a clear case.

*Appeal from Mahaska District Court.*

WEDNESDAY, DECEMBER 12.

*Seevers, Williams & Seevers* for the appellants.

*Rice, Myers & Rice* for the appellee.

LOWE, C. J.—The plaintiffs claiming the right of possession in a stock of goods, replevied them from defendant, who contested their claim. The trial was had before the court, who made a finding of the facts, and gave judgment for the defendant. A motion for a new trial was made, overruled, exceptions taken, and plaintiffs appealed.

It is claimed that the judgment of the court was against the weight of evidence, and that there was error in not granting a new trial. In order to reverse a judgment on this ground, the error complained of should be clearly manifest. *Bowman* v. *Torr,* 3 Iowa 571; *Hall* v. *Hunter* 4 G. Greene. 539.

The record contains all the evidence and exhibits the following facts: On the 14th day of July 1857, plaintiffs held two promissory notes against one Charles E. Ford, amounting in the aggregate, with interest up to the date of the trial, to about nineteen hundred and fourteen dollars. Ford to secure the payment of these notes executed a chattel mortgage to them upon them upon his stock of goods. These goods were taken into possession by plaintiffs who proceeded to sell them at private sale, by an agent of the name of Skiff; and the condition of the mortgage is that

the plaintiffs were to hold possession until their notes or indebtedness was paid off in full, at which time the mortgage should become void.

The evidence further shows that Skiff, the agent of the plaintiffs, realized in cash from a sale of a part of these goods twenty-five hundred and thirty-eight dollars and seven cents; that of this sum five hundred and seventy-six dollars and sixty-nine cents was applied to the clerk hire and expenses of selling, leaving a sum of ninteen hundred and sixty-one dollars and sixty-eight cents, which considerably exceeds the plaintiff's entire debt, including interest up to the date of the trial; which would not be right, as the interest could not run beyond the time when the money was obtained from the sale of the goods. The evidence further shows that whilst these goods were being sold by the plaintiffs at private sale under their mortgage, Ford the mortgagor, sold and transferred all his right and interest in the goods to the defendant, who removed the lock from the door of the store where the goods were kept, and replaced it with a new lock, whereby he succeded in excluding the agent of the plaintiff from the store and taking possession himself.

The manner in which he effected this may involve a question of morality or propriety which we do not propose to discuss, as it bears too remotely upon the issue which the parties themselves have made in this case, to merit any greater attention than it has received from the hands of counsel.

Under the pleadings the question was which of the parties had the paramount right of possession to these goods. At the time the defendant obtained possession of them, the plaintiff's debt had been entirely paid off, including all the costs of selling the same. This being the case their right to possess and control the unsold portion of the goods had ceased to exist either at law or in equity as against the mortgagor or his assignee. As we therefore understand the case, it is unnecessary to determine the question raised and

discussed, whether or not it was a part of the agreement between plaintiffs and Ford that the expenses of selling the goods were to be paid out of the proceeds of the same, for if this *was* the agreement, then it has been done.

But, if this question was material for the plaintiff, we again say, that inasmuch as the court below found that there was no such agreement under the evidence adduced, we are not prepared to conclude that he so clearly erred in this matter that we would be justified in granting a new trial, because as a matter of fact the evidence upon this point was vague, uncertain and even contradictory.

Again in argument it is insisted by plaintiffs, that Ford gave a second mortgage on the same goods to secure the payment of six or seven hundred dollars to one Abigal E. Neeley at the same time that their mortgage was executed, and that this second mortgage would be entitled to a *pro rata* payment from the proceeds of the goods. It is perhaps sufficient to say that there is no evidence whatever which connects the plaintiff's possession or right of possession with the said Abigal's claim.

They were not her agents or trustees, nor had they so far as the evidence discloses, any rights under her mortgage, but by the terms of their own mortgage their right to the goods ceased the moment they were paid their claim.

Affirmed.