## MAX KRAKAUER v. MORRIS R. LOCKE & Co.

### No. 220.

**1. Mechanics' Liens—Subcontractors have no Lien.**—Under article 3179a, Revised Statutes, all mechanics, laborers, and operatives who may have performed labor, or worked with tools, teams, or otherwise in the construction or repair of any railway, * * * have a preference lien on such railway and its equipments, does not give a lien to contractors or subcontractors on the railway and its equipments for work performed by them through hired men and teams that they might employ.

**2. Assignment of Claim to Subcontractor.**— A subcontractor who employs laborers to build a railway, and when the wages became due they were extinguished, can not acquire a lien on the railway by having the claims of the laborers assigned to him.

APPEAL from El Paso. Tried below before Hon. T. A. FALVEY.

*Millard Patterson*, for appellant.

*H. H. Neill* and *Davis, Beall & Kemp*, for appellees.

FLY, ASSOCIATE JUSTICE.—Appellant instituted suit in the District Court of El Paso County against Morris R. Locke, W. C. Masten, and C. S. Masten, composing the firm of Morris R. Locke & Co., and the Kansas City, El Paso & Mexican Railway Company, to recover the sum of $5099.68, and praying that a lien be foreclosed on the property of the railway. It was alleged that Morris R. Locke & Co. were responsible for the $5099.68 sued for. That the same was for money due F. E. Nel-

son and William A. Detwiler for labor performed by them in construction, building and laying, backfilling, and surfacing ten miles of railway from El Paso in the direction of White Oaks, New Mexico. It is alleged that for a valuable consideration the claims of Nelson and Detwiler had been transferred to appellant. That $4978.93 of the indebtedness is for the sums due a large number of laborers, whose names are set out, together with the respective sums due each of them, which sums were by the laborers, together with their liens, transferred to Nelson and Detwiler and by them transferred to appellant. On the 5th day of April, 1889, appellees filed their answer, and on May 26, 1892, the railway company filed its first amended original answer, alleging that since the suit was instituted a receiver had been appointed for the railway and all its property, and that he by order of court had sold all the property belonging to the railway company to Jay Gould, and that said receiver was a necessary party to the suit; that F. E. Nelson and W. A. Detwiler were also necessary parties to the suit; that appellant had no lien on the railway property, and that if he ever had any lien it was paid off and discharged. The case was tried without a jury, and resulted in a judgment against Morris R. Locke & Co. for $5099.68, and in favor of the railway company for costs.

From the findings of fact of the trial judge, we ascertain that Morris R. Locke & Co. entered into a contract with the railway company to build and construct the road; that they entered into a contract with F. E. Nelson to backfill and surface ten miles of the road at the rate of $150 per mile, and to lay the track for $400 per mile; that Nelson performed a part of his contract through his own personal labor and that of his own and hired teams and the labor of other men he hired; that Morris R. Locke & Co. were indebted to him for his work in the sum of $2750 when he transferred the contract and indebtedness to William A. Detwiler, and the latter undertook the further fulfillment of the contract, with the approval of Morris R. Locke & Co. That Detwiler performed the balance of the work as he had contracted, laboring personally and hiring men and teams to assist him, and that by virtue of said labor Morris R. Locke & Co. became indebted to him in the sum of $2750 in addition to the amount that was due him on the claim of Nelson for $2750; that Nelson had between 300 and 400 men employed on the road, and Detwiler had about 200 men employed; that no payment was made on the claims of Nelson and Detwiler except $401, which left due and unpaid $5099; that the amounts set opposite the names of the laborers were for wages due; that the wages were paid to each of them by Nelson and Detwiler, and that each had transferred in writing to said Nelson liens which they claimed by virtue of article 3179a of the Revised Statutes, and Nelson transferred the same to Detwiler, who transferred them to appellant for a valuable consideration.

In April, 1890, the Kansas City, El Paso & Mexican Railway Company was placed in the hands of a receiver by the District Court of El Paso County, and the receiver gave the required bond and took the oath, and by virtue of an order issued out of said court the receiver sold all the property of the railway company. The order confirming the sale recites that all persons claiming liens on the property had filed their consent in writing that the report of sale could be taken up and acted on at once.

The district judge held that Nelson and Detwiler were subcontractors and not laborers in the purview of article 3179a, and that when the laborers were paid their wages their lien was extinguished, and could not be kept in force by a mere agreement to that effect between the laborers and Nelson. This ruling of the district judge is assigned as error.

Article 3179a is as follows: "All mechanics, laborers, and operatives who may have performed labor, or worked with tools, teams, or otherwise in the construction, operation, or repair of any railway, locomotive, car, or other equipment of a railway, and to whom wages are due or owing for such work, or for the work of tools or teams thus employed, or for work otherwise performed, shall hereafter have a lien prior to all others upon such railway and its equipments for the amount due him for personal services or for the use of tools or teams." This part of article 3179a was passed in 1887, as an amendment of the law of 1879, and the object of the amendment seems to have been to extend the operation of the law so as to include labor performed with tools, teams, or otherwise, which were not included in the original act.

As an assistance in arriving at the legislative intent in passing the law of 1879, we recur to the caption of the bill, which is as follows: "And to protect mechanics, laborers, and operatives on railroads against the failure of owners, contractors, and subcontractors or agents to pay their wages when due, and to provide a lien for such wages," and the caption to the amendment is "An act to amend section 1 of an act entitled," and then follows the caption of the law of 1879.

It will be noticed that the lien is created for *wages* due or owing for the work, or for the work of tools or teams thus employed. The statute of 1879 has been construed by the Court of Appeals, and we are inclined to the belief that the amendment of 1887 was passed to remedy the supposed defect. It was held by the Court of Appeals, and it is amply sustained by leading authorities, that the statute, before it was amended, did not include the work with " tools, teams, or otherwise," as now set out in the statute. The Legislature has seen proper, however, to amplify and extend the scope of the statute, and we have seen no construction of it since the amendment in 1887.

While the scope of the statute has been greatly extended, we are of the opinion that it can not be legitimately extended so as to create a lien upon the railroad and equipments in favor of a contractor or subcon-

tractor for all work performed by him through hired men and teams that he might employ.   That the intention was not to protect contractors or subcontractors is clearly indicated in the caption of the bill herein before quoted, and for the reason that the second section of article 3179a still provides for the lien to enforce the collection of wages due, whether " performed either at the instance of said company, a contractor, or subcontractor, or agent of said company."   The reading of the amendment itself would indicate that the lien given is to protect none but those who perform the labor with their own hands or through the medium of their tools or teams.   The expression is, " who may have performed labor, or worked with tools, teams, or otherwise," and the parties who are included in the scope of the statute are "mechanics, laborers, and operatives." No other class is protected by the provisions of article 3179a.

Can contractors or subcontractors be included in either class mentioned in the statute?   It would take an exceedingly liberal construction of the statute to so include them.   But this is a lien created by the statute and imposing burdens upon railway corporations not contemplated by the common law, and its provisions should not be extended to include any claim not clearly included in the terms of the statute.   Atchison v. Railway, 6 Abb. Pr. Rep. (N. Y.), 329; Balch v. Railway, 46 N. Y., 524.

The words " labor," " personal services," and " wages," used in the statute, would indicate the class of persons to whom it is applicable.   Railway v. Matthews, 75 Texas, 92.

In the State of Georgia, under constitutional and statutory provisions giving mechanics and laborers liens for labor performed, it is held, that contractors are not entitled to the benefits of the lien, and that the provisions of the law does not include the contractor, even though he be a mechanic or laborer by vocation.   Railway v. Callahan, 49 Ga., 506; 2 Rorer on Rys., 775.   The law was afterwards amended, in Georgia, so as to include the contractor.

The work performed by Nelson and Detwiler was done under a specific contract, by which Morris R. Locke & Co. were to pay them a specified sum for each mile of railway completed by them according to the terms of the contract.   They were subcontractors, and not laborers, mechanics, or operatives in the purview of the statute, and not belonging to the class protected by the statute, they were not entitled to the statutory lien on the railway and its equipment.

It is contended by appellant, that Nelson and Detwiler were not contractors, but laborers as provided for in the statute, and in support of this proposition the case of Railway v. Daniels, 62 Texas, 70, is cited and claimed to be decisive of this case.   In the Daniels case it was held, that the contract showed that the work " was done neither as a contractor, builder, nor material man, but was the work of laborers who

were employed and engaged by a subcontractor to perform and do the work and labor set forth in the petition." It is further said: "The labor of manufacturing crossties at a specified price for each crosstie thus manufactured, or for their reasonable value, to be paid by the subcontractor, we think is clearly the work of the laborer, and is not to be confounded with the fulfillment of a contract to furnish and deliver a certain quantity of crossties at an agreed rate of compensation, in the capacity of contractor. Those persons who engage in the manual labor of cutting, hewing, and otherwise preparing the timber for suitable use as crossties, at the instance and request of the contractor or subcontractor, are the laborers who do that work, and we think the court did not err in thus treating the plaintiff's claim for a lien against appellant."

There can be no doubt that the men hired by Nelson and Detwiler would have had liens against the railway for their wages, and that is all that is decided in the Daniels case. The contract was to make crossties at a specified price for each crosstie, to be paid by the subcontractor, and the laborer had a lien for his work; but as indicated in the Daniels case, the rule would have been different if a contract had been let to furnish a certain quantity of crossties at an agreed rate of compensation.

The contract of Nelson with Morris R. Locke & Co. was to the effect that Nelson, in consideration of $400 per mile, was to lay ten miles of track on the railway, and also to backfill and surface at the rate of $150 per mile. This was clearly the work of a contractor and not of a laborer, if there is such a thing as a contractor or subcontractor in connection with the building of railways. There was no contract to work a specified time at so much per day; there was no agreement to remove and place a certain number of cubic feet of earth at so much a cubic foot; there was simply an agreement to lay the track and place in running order ten miles of railway. The laborers on the road did have a lien on the railway for wages due them by Nelson and Detwiler, and if they had not been paid, they could have enforced their lien.

While in some other States it has been held that a statutory lien created in favor of laborers is a personal right and not assignable, it is held in Texas that the lien can be assigned; and the question arises, did the transfer by the laborers of their supposed liens to the men who had employed and owed them wages give their employers a lien on the railway and equipments? If this be the law, then a contractor who may employ hundreds of men can, by getting a transfer of the lien held by the laborer, hold the property of the railway for wages that he is bound to pay. In other words, he is getting indirectly what the law does not directly give him. The object of the law is "to protect mechanics, laborers, and operatives of railways against the failure of owners, contractors, and subcontractors or agents to pay their wages when due, and provide a lien for such wages," and it would be a singular species of legal legerdemain that would per-

mit the very parties against whom the protection is sought to obtain a lien by paying off their debts due for wages to hired laborers. We can not imagine that the Legislature ever contemplated such a thing in passing the statute under construction.

Let it be kept in mind that Nelson had entered into a contract to build the railway, and he employed the laborers, and when the wages became due, the first moment in which the lien could possibly attach, it was extinguished by the debts being paid. On this point no authorities have been cited by appellant, and we have regretted our inability to obtain the cases of Shiver v. Johnson, 62 Alabama, 37; Dryer v. Lewis, 57 Alabama, 551; Bellamy v. Doud, 11 Iowa, 285; Hunt v. Daniels, 15 Iowa, 146; and Butler v. Tufts, 13 Maine, 302, which are cited by appellees and claimed by them to be conclusive in favor of the position assumed by us in the disposition of this case.

Unaided by a precedent, we are of the opinion that the liens of the laborers were extinguished by their payment, and that the law never contemplated that a contractor could obtain a lien on railway property for debts due by him for labor. The attempted transfer of the liens by the laborers was an attempt to transfer to a man his own debt, and secure him in its being repaid by a lien on the property of another. This court will not, of its own volition, extend the law that far.

Not seeing any error in the judgment of the District Court, it is affirmed.

*Affirmed.*

Delivered February 21, 1894.

Justice NEILL did not sit in this case.

Motion for rehearing overruled April 5, 1894.

Writ of error refused.