FT. WORTH & D. C. RY. CO. v. READ BROS. & MONTGOMERY et al.

(Court of Civil Appeals of Texas. Texarkana. June 27 and 30, 1911. On Rehearing, Oct. 26, 1911.)

1. RAILROADS (§ 159*) — LABORERS' LIENS — WORK AS FOREMAN.

A subcontractor on railroad construction work has no laborer's lien for wages for so much of the amount due as was earned by his own employés though he oversaw their work.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 477–504; Dec. Dig. § 159.*]

2. RAILROADS (§ 189*) — LABORERS' LIENS — BURDEN OF PROOF.

The burden is on one claiming a laborer's lien for wages in doing railroad construction work to show the amount of each item for which a lien is claimed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 622; Dec. Dig. § 189.*]

3. RAILROADS (§ 159*) — LABORERS' LIENS — RIGHT.

To entitle one to a laborer's lien under Rev. St. 1895, art. 3312, giving all laborers, etc., who have worked with tools, teams, or otherwise in the construction of any railroad, and to whom wages are due therefor, a lien prior to all others upon the railroad for such personal services, it must appear that claimant was entitled to wages for actual labor done by him.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 477–504; Dec. Dig. § 159.*]

4. RAILROADS (§ 159*)—LABORERS' LIENS—NOTICE.

A laborer's failure to give notice to the railroad company of his claim against contractors for wages before the company's settlement with the contractor would not defeat a right to a lien under Rev. St. 1895, art. 3312, giving all laborers, etc., who have performed labor or work with tools, teams, etc., in the construction of a railroad, and to whom wages are due for such work, a lien prior to all others upon the railroad for the amounts due for personal services, etc.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 477–504; Dec. Dig. § 159.*]

---

Error from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by Read Bros. & Montgomery and others against the Fort Worth & Denver City Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded as to one plaintiff, and affirmed as to another.

Read Bros. & Montgomery were independent contractors, and entered into a contract with the railway company to construct a complete spur track from a point on the main line at Alvord to a rock quarry. These contractors made a contract of employment with defendants in error Bourgeois and Sharp, by which each was to do certain grading and clearing off the right of way. Bourgeois was to do the grading and clearing of the right of way on miles 3, 4, and 9, and Sharp was to do the same character of work on miles 5 and 6 of the spur. For the grading they were to be paid per cubic yard 12 cents for moving dirt and 70 cents for moving rock. For clearing, grubbing, and cleaning the right of way Bourgeois was to be paid $30 per acre, and for removing obstacles and stumps off the right of way Sharp was to be paid $12.50 per acre. Bourgeois, in the performance of this work, put on his eight teams and tools, and furnished drivers for the teams. There were moved 6,000 yards of dirt, and 1,000 yards of rock, and there was extra work done on a part of the grade in handling dirt to cover the ties, and five acres of land were cleared off. Sharp, in the performance of his work, put on two teams and tools; one of the teams being driven by himself, and one by a hired employé. He also used a hired team. There were moved 3,912 yards of dirt, ties were hauled for distribution, a header bank was put in and 3¾ acres of the right of way cleaned off. Each defendant in error claimed in the petition that there was a balance due and owing them for the work, after allowing all credits, by the contractors, and that they had a laborer's lien, under art. 3312, R. S., upon the railway. Upon the issues as found by the jury, a personal judgment was entered in favor each of Bourgeois and Sharp against the contractors, and adjudging and foreclosing a lien upon the spur track. The railway company appeals from the judgment awarding a lien against it. ,

Spoonts, Thompson & Barwise, Harris & Harris, and J. M. Chambers, for plaintiff in error. Templeton & Agerton and Bell & Milam, for defendants in error.

LEVY, J. (after stating the facts as above). The assignments predicate error in adjudging and foreclosing a lien upon the spur track. As the claims of the two defendants in error are separate, they are here passed on separately. As to the claim of Bourgeois, the jury found that the items that made up his account were the hire of eight teams and tools for 44 days at $1 per day, filling washout, $100, clearing five acres of land of right of way, $150, and moving with teams and tools 6,000 yards of dirt at 12 cents per yard and 1,000 yards of rock at 70 cents per yard, aggregating $1,420. The jury found that the total amount paid Bourgeois by the contractors was $1,092.58, and that the total amount still due and owing at the completion of the work was $1,049.42. The court foreclosed the lien for the full amount of the balance found due. The point made is that, as to the account of Bourgeois for grading and clearing the right of way, the evidence admittedly shows that most of the work was done through hired hands, and some by Bourgeois personally, but the evidence fails to show how much labor was performed by him, and therefore he has not shown that the statutory lien embraced all the items of this portion of the account. The grading account appears in a lump sum, earned by the use of teams, tools, and labor. The precise amount earned and for which wages are owing from each source does not appear. So we must take the record as merely showing a gross amount earned by means of the use of teams, tools, and labor. The clearing was done by labor. It appears that the hired hands were all paid off.

[1–3] For so much as was earned by his own employés, Bourgeois himself had no lien. Railway v. Davis, 37 Tex. Civ. App. 342, 83 S. W. 883; Krakauer v. Locke, 6 Tex. Civ. App. 446, 25 S. W. 700; Parks v. Locke, 25 S. W. 702. Under the facts of this record, he may have a lien for the work done by his teams and tools, because the work was done by him by his teams and tools. The jury were expressly asked to give answer if Bourgeois personally performed any actual labor or work, either on mile 3 or mile 4. This question included work of grading and cleaning. They answered, as to mile 3, "He did some grading, but we cannot say how much." As to mile 4, the jury answered, "We agree that Bourgeois did some actual labor, but cannot say how much." It is admitted that most of the work was actually performed by hired men. It only appears in the evidence, as found by the jury, that Bourgeois did some work himself. So, assuming, as we must, that he did some work, the amount or value of the time as wages to him could not be arrived at by any process of deduction, because the record does not show what this was. For merely overseeing the work of his hired men, if he did, out of whose work he was realizing a profit under a contract with the contractors, and himself not actually performing labor of some kind in some way, he would not be entitled to a lien. He would be under such circumstances, and to that extent at least, classed simply a subcontractor, and not a laborer. Railway Co. v. Foley, 30 Tex. Civ. App. 129, 69 S. W. 1030. It is wages for personal labor that the statutes protect by lien. By the judgment as entered,

we would be required to assume that some part of the amount allowed for grading and clearing was for and included personal labor of Bourgeois, and, in the absence of any proof of the amount of the wages due him therefor, however small or great that amount might be, error in allowing a lien to that extent exists. It is a well-established principle that one cannot foreclose a lien without establishing the right to a lien. The extent of the lien was dependent upon the amount of wages owing him, and the burden of proof was upon Bourgeois to show the amount on each item for which a lien was claimed. And, in order to have a lien, it must appear affirmatively that it was for wages for actual labor by him.

Defendant in error Sharp sued for $391.77. The jury found that the items that made up his account, and upon which he asserted a lien, were $30 for work done on mile 6, $46.50 for cleaning and grubbing the right of way on mile 5, $4 for erecting the header bank of mile 5, $13.50 for hauling ties, $20 for cutting a ditch, $1 for extra labor done, and $469.44 for moving 3,912 yards of dirt. The evidence shows that the work was done by means of teams, tools, and labor. Sharp had two teams, one of which was driven by him, and the other by a hired hand. He also used on the grading a hired team. Hired help was also used in cutting the ditch and constructing the header bank, and in clearing and grubbing the right of way. Sharp himself labored in the work. His statement is uncontradicted that "I worked every day it was fit." The jury found that the total amount paid Sharp by the contractors was $219.57, and that the balance was owing. Sharp testified that the total amount of all the hired help used by him was $96.43, and that out of the money paid him by the contractors he fully discharged this indebtedness. The amount of this hired help is not in the amount claimed for a lien. The jury found that Sharp had paid the labor claim. Sharp also testified that he credited a claim of $26.80 due to him by the contractors out of the money paid him by the contractors. So by the record it must be said that the claim of Sharp as sued on, and for which a lien was allowed, represents his personal labor, and the labor of his teams and use of tools on the spur track. The assignments claiming that Sharp has not shown himself entitled to a laborer's lien under article 3312, R. S., and for the amount awarded, cannot therefore be sustained.

[4] It is contended that the court erred in rendering judgment foreclosing a lien, for the reason that the railway company had no notice, at the time it made final settlement with the original contractors, that the contractors owed defendants in error. It is in evidence that the engineer of the railway company knew these defendants in error had labored with teams and tools in the construction of the spur. The lien given by the

140 S.W.—8

statute remains in force one year from the creation thereof, and no notice is required to keep such liens in force. The lien would not be defeated because the laborer did not give notice to the railway company of his claim against the contractors before the company settled with the contractors.

The judgment as to Bourgeois is reversed, and his cause remanded, and the judgment in favor of Sharp is affirmed. The judgment against Read Bros. & Montgomery, not being appealed from, will remain undisturbed.

### On Rehearing.

The defendant in error Bourgeois is insistent that the particular ruling below mentioned is opposed to the holding in the cases of Railway Co. v. Humphreys, 1 (W. & W.) Civil Cases, § 569; Railway Co. v. Foley, 30 Tex. Civ. App. 129, 69 S. W. 1031; Milligan v. Railway Co., 46 S. W. 918. The ruling is, "For merely overseeing the work of his hired men, if he did, out of whose work he was realizing a profit under a contract with his contractors, and himself not actually performing labor of some kind in some way, he [Bourgeois] would not be entitled to a lien," because "he would be, under such circumstances, and to that extent at least, classed simply as a subcontractor and not a laborer." This was speaking strictly to the proof here and the claim for labor done by Bourgeois under his contract with Read Bros. & Montgomery to grade, clear, and grub a part of the railway. In the case of Humphreys, supra, Bussey was a subcontractor, and Allen was engaged by him as the foreman or superintendent of a company of laborers in the construction of a railway. He performed such labor, and the proof was specific that he performed such service directly "for 37 days for which he charged $3 per day, making $111." He was classed as a laborer, and was allowed a lien as such, because he was employed and worked distinctively as a foreman of the gang of laborers, and along with them. Pat and R. C. Foley, in the case supra, owned a construction outfit of teams and tools and undertook under a contract with Smith to clear, grub, and grade a certain portion of the line of railway. Becoming involved in debt, they let the teams to Smith, to use in the work in payment of the debt owing the contractor, who continued to use them after the debt was paid. They were denied a lien for the teams, but for the distinctive work of Pat Foley for two days' work as foreman, as such, of the subcontractor, Smith, he was allowed a lien. It was not merely for overseeing the work performed by Foley & Foley, as subcontractors, in the first instance, under Smith, or because they were owners of the teams hired to Smith, that Pat Foley was allowed a laborer's lien. It was because he worked distinctively as foreman for two days for Smith, the hirer of the teams. In the case of Milligan, supra, an auditor in the employ of a construction

company that constructed a railway was held not included in the terms of the statute. The cases are clearly distinguishable from the instant one.

The motion is overruled.