---

SMITH v. SCHILE et al.

(Supreme Court, Appellate Division, First Department. March 13, 1903.)

1. MECHANICS' LIENS—ASSIGNMENT OF CONTRACT—LIABILITY OF ASSIGNEE.
    Where plaintiff, who was on the bond of a building contractor, agreed with the latter and the owner to complete the work and to receive the compensation, thereby being released from liability for the contractor's delay, he became the assignee of the original contractor, and his right to the amount due on the completion of the work was subject to liens that had been perfected against the original contractor.
    Van Brunt, P. J., dissenting.

Appeal from Judgment on Report of Referee.

Action by George Moore Smith against Henry J. Schile and others to foreclose a mechanic's lien. From a judgment granting insufficient relief, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, INGRAHAM, McLAUGHLIN, and LAUGHLIN, JJ.

Chauncey S. Truax, for appellant.
Joseph A. Farley, for respondents.

INGRAHAM, J. This action was to foreclose a mechanic's lien. Other materialmen, who had filed liens upon the property, were made defendants, and interposed answers claiming, as against the plaintiff, that their liens were entitled to a preference. The referee found that there was due and owing from the defendant Schile, the owner of the building, the sum of $4,446.40, with interest; that the defendants Hough, Pfotenhauer, and Dyer had filed liens affecting the premises; that these defendants were entitled to be paid the amount due upon their respective liens out of the amount due from Schile; and that the plaintiff was entitled to the balance of the amount due upon the contract. From the judgment awarding this priority the plaintiff appeals. No question is made as to the validity of these several liens, and the owner of the premises does not appeal.

It appears that in August, 1898, Henry J. Schile, the owner of the

¶ 1. See Mechanics' Liens, vol. 34, Cent. Dig. § 149.

property, entered into a contract with one Webster White to erect a building upon the premises in question, by which contract White agreed to complete the work covered by the contract on or before November 15, 1898, and agreed to pay a certain penalty, for each and every day after that day until the whole of the work was fully completed, as liquidated damages, payments to be made in six installments as the work progressed, and the total amount to be paid under the contract aggregating $7,173. The contract further provided that if at any time there should be any liens or claims for which, if established, the owner of the premises might become liable, and which are chargeable to the contractor—

"The owner shall have the right to retain out of such money then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all money that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default."

To secure the performance of that contract, White (the contractor) and the plaintiff executed a bond in the penalty of $10,000, conditioned upon White's performance of all the conditions and covenants on his part to be kept and performed in said contract, and upon the obligors indemnifying and holding harmless the owner from all damages, costs, and expenses which might accrue or be caused by any delay, default, or neglect on the part of White in the performance of the said covenants and agreements to be kept and performed. White went on with the performance of this contract until the 18th or 19th of November, 1898. The 19th of November was on Saturday, and on that day White was unable to pay his laborers for the preceding week, and he then seems to have come to the conclusion that he would be unable to complete the contract. On the morning of November 21st, the plaintiff was informed that White was unable to complete the contract, and was requested to attend a meeting on that morning in 125th street. At that meeting White was present, with some of the other defendants. White there told the plaintiff he had given up the work, that he could not proceed with it, that he had ceased work on the preceding Friday night, and could not pay his men. After some discussion this meeting was adjourned to the office of the plaintiff's attorney, where the parties again met in the afternoon of that day, when the proposition was made that the plaintiff should complete the buildings under the White contract. There was a discussion then as to the amount that would be due to White upon the completion of the building, and it was stated that White had received two payments, aggregating $2,500, less an amount that had been retained by the owner to pay for some vault privileges, and it was understood that there was then between $5,000 and $5,700 to be paid by the owner upon the completion of the contract. After this discussion the plaintiff agreed to complete the buildings for the money that would become due to White upon their completion, and that a contract should be prepared which should express this agreement. Subsequently a contract was prepared, which was submitted to the owner for his approval, and which, after some modification,

seems to have been executed. That agreement was dated November 23, 1898, Webster White, was party of the first part, David M. Williams and Sylvanus Williams, parties of the second part, Henry J. Schile, the owner of the premises, party of the third part, and the plaintiff, party of the fourth part. After reciting the execution of the contract between the owner and White for the erection of these buildings, and the execution by the contractor and the plaintiff of a bond conditioned for the faithful performance by the contractor of the contract, that a portion of the buildings had been completed as specified in said contract, and that the contractor wished to transfer his contract with the said owner to the party of the fourth part (plaintiff), with the consent of the tenants and the owner, the first clause of the contract provided that:

"Said contractor hereby assigns, transfers, and sets over unto the party of the fourth part all his right, title, and interest in and to the said agreement between the said contractor and the said owner, made August 15, 1898, and to all sums of money due and to grow due thereunder, and consents that the said owner may discharge and release the said party of the fourth part from each and every obligation on the part of the party of the fourth part incurred by reason of the execution by the said party of the fourth part of the said bond to said owner."

The second clause released the plaintiff from each and every obligation incurred by him to the owner by reason of the execution and delivery of the said bond; and the fourth clause provided that:

"The party of the fourth part hereby accepts the said assignment of said contract of August 15, 1898, between the said contractor and the said owner, and agrees to and with the said owner to complete the building therein provided for according to the terms and conditions thereof at the earliest possible moment and with due diligence. * * * That the completion of said buildings shall not cost the owner any greater sum than that provided for in said contract as the price for such work. That nothing herein contained shall subject the party of the fourth part to any liability for the failure to complete said building or portions thereof on the dates as agreed in said contract of August 15, 1898, between said contractor and said owner, nor shall said owner make any deduction from any installment or payment under said contract hereafter reached by said Smith, the party of the fourth part, by reason of any claim against said contractor arising from any failure on his part to complete said building or any portion thereof at the time fixed in said contract."

After the execution of this contract the plaintiff went on with the work, taking it up at the point at which White had left it, and completed the building as provided for in the contract, whereupon there became due to him under the contract the sum for which he filed his lien which was sought to be foreclosed in this action. Before the plaintiff had filed his lien, the defendants before named, who had furnished materials or labor to White under his contract prior to its assignment to the plaintiff, filed liens for a certain amount due to them from White which they had supplied or furnished for the building. There was no dispute but that the labor and materials specified in these liens had been duly supplied by the lienors to White prior to the time of the transfer of the White contract to the plaintiff, and that the liens were regularly filed within the time allowed by the lien law and complied with its provisions. Nor is it disputed that these liens would be valid as against White and any

amount that was due to White under this contract; the plaintiff's claim being that he was an independent contractor, who was entitled to receive from the owner the amount provided to be paid in the contract of November 23, 1898, and that as there was nothing due to White under the contract, he having abandoned it prior to the making of the contract of November 23d, these lienors were not entitled to be paid out of the amount earned by the plaintiff under this contract. The determination of this question must depend entirely upon the terms of the agreement under which the plaintiff undertook to complete White's contract.

When this agreement was made, White had partially performed his contract with the owner, and had received all that was due to him at that time according to its terms. He was, however, under obligation to complete the building, and the plaintiff was responsible to the owner for a completion of the building according to the terms of the contract. It may be conceded that, had this contract been annulled or abandoned and the plaintiff had proceeded to make a new contract with Smith for the completion of the building, Smith would have been entitled to receive from the owner the amount provided for in that new contract, and these lienors would have been entitled, as against Smith, to no portion of the amount that the owner had agreed to pay to Smith for the work that he did in the completion of the building. As between White, his creditors, and the owner, White or his creditors would then have been entitled only to the balance of the amount that White would have earned, had he completed his contract after all payments that had been made to Smith for the work that he had done in its completion. That, however, was not the situation. What the plaintiff did was to accept an assignment of White's contract, and agree to perform that contract for the amount that would have been due to White had he completed the contract. Smith, as White's surety, would be liable for any damage that the owner of the property sustained in consequence of White's failure to complete his contract, and by accepting an assignment of the contract and agreeing to perform its covenants and conditions he thereby stepped into White's shoes as the contractor, and performed, not a contract with the owner, irrespective of White, but White's obligations, and agreed to perform them for the amount that would have been due to White, had he completed his contract. The plaintiff by this agreement became the assignee of White's, and as such, not independent of White, he agreed to complete what White had left uncompleted for the consideration that was coming to White upon the completion of the contract. He therefore accepted the position of carrying out White's contract with the owner for the consideration that White would have received, had he completed it, and for this undertaking on his part the plaintiff received a substantial advantage. He was released from his obligation to pay the damage that would be sustained in consequence of White's delay in completing the building on November 15, 1898, a period that had expired at the time this transfer of the contract to the plaintiff actually occurred, and the evidence is that the building was not completed for several months thereafter; so that, if this clause of the White contract had been

enforced, the plaintiff would have been subject to a considerable liability. The plaintiff, as the assignee of White, having done this work, and being entitled to be paid the amount due to White, that amount became subject to the lien of those who had furnished White material and labor used upon the building. The money coming to the plaintiff was money due under White's contract between himself and the owner, and one taking the contract took it subject to the liens for work done under the contract prior to its assignment. The difficulty in the plaintiff's position is that his right to this money arises by virtue of the assignment to him of the White contract, and he takes it, therefore, as White's assignee, not by virtue of any independent contract with the owner to do the work; and thus, having acquired White's right to complete the work and to receive the compensation to be paid therefor, that right is subject to any lien upon the money due to White which had been acquired by those who had furnished White with labor or materials in the prosecution of his contract.

No case is cited by any of the counsel that presents this exact question. In Stevens v. Ogden, 130 N. Y. 182, 29 N. E. 229, it was held that under the lien law the filing of the notice originates the lien; that anterior to this act the laborer or materialman has no preferential right to be paid for his labor or material out of the sum which is due from the owner of the building to the contractor, but stands in the same position as other creditors; "that he may subject the debt to a lien in his favor on filing the notice and taking the proceeding prescribed by the act, but if, before this has been done, other creditors, pursuing the usual remedies for the collection of debts, have acquired a legal or equitable right to have the debt applied in satisfaction of their claim, the right is not overreached by liens subsequently filed under the act, unless priority is given by the provisions of the act itself;" and that an assignee of a claim of a contractor against the defendant, by a title which antedates the filing of the notices of lien, acquires a title to the demand of the creditor subject to the lien. In this decision the court followed McCorkle v. Herrman, 117 N. Y. 297, 22 N. E. 948. In this case, two of the three liens were filed before the plaintiff acquired an assignment of the contract, and the other lien was filed a few days after; but here there is no assignment of an existing claim by White against the owner, but the plaintiff took an assignment of White's executory contract, and agreed to perform that contract for the money that was to be paid to White upon its performance. He simply became White's representative in the completion of the contract, and the amount that he was to receive upon the completion of that contract was the amount that was to be paid for the work White had already done, as well as for the work that the plaintiff was to do in the future; and when that amount was received it was subject to liens that had been perfected as against White, whose interests and rights had been acquired by the plaintiff.

It follows that the judgment appealed from must be affirmed, with one bill of costs against the appellant. All concur, except VAN BRUNT, P. J., who dissents.