# WINTER v. HAZEN-LATIMER COMPANY.

MECHANICS' LIENS; NOTICE OF LIEN; SUBCONTRACTOR; DEFAULT BY CON-
TRACTOR; PRINCIPAL AND SURETY; COMPLETION BY SURETY.

1. A subcontractor who did work upon and furnished materials for a building under contract with the contractor who thereafter absconded upon receiving payment in full for work already done, the owner having duly made the payments without notice of the subcontractor's right, has no lien or claim upon moneys subsequently accruing to the contractor's surety by reason of its completion of the work under power reserved to it in the bond, where, as in the District of Columbia, the statute limits the subcontractor's lien to money due the contractor from the owner at the time the latter receives notice from the subcontractor.

2. Performance of a building contract by the surety of the contractor after abandonment by the latter is not in law a performance by the principal, and the surety occupies a new relation to the owner, exactly as if it had been a stranger to the original contract.

3. A subcontractor, in the absence of anything to show the contrary, will be presumed to have known the terms and conditions of the contractor's contract with the owner, in view of the fact that sec. 1243, D. C. (31 Stat. at L. 1385, chap. 854), renders such information available.

No. 2652. Submitted October 7, 1914. Decided December 7, 1914.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia overruling their

demurrer to a bill filed for the establishment of a lien for materials furnished and labor performed in the construction of a building by them.                    *Reversed.*

The Court in the opinion stated the facts as follows:

This is an appeal by Mahlon A. Winter, George W. Faris, and the Fidelity & Deposit Company of Maryland, defendants, from a decree of the supreme court of the District of Columbia entered upon a demurrer to a bill in equity. The bill was filed by the appellee corporation, Hazen-Latimer Company, as a subcontractor for a lien for materials furnished and labor performed in the construction of a building for appellants Winter and Faris. Defendant Piper was the contractor, and the Fidelity & Deposit Company of Maryland, his surety. The property in question was released by an undertaking under sec. 1255 of the Code [31 Stat. at L. 1387, chap. 854], with the owners Winter and Faris as principals, and the Fidelity & Deposit Company as surety. The bill sought a decree against the appellants for the amount of the claim, $1,016.

The contract between the owners and Piper, the contractor, provided that the consideration should be paid in instalments as the work progressed, the first payment of $3,200 to be made when the first-floor joists were laid. Before this payment became due, the subcontractor, Hazen-Latimer Company, had performed the work here in question under its agreement with the contractor. When the first-floor joists were laid, the owners, without notice of the claim of the subcontractor, paid the contractor the first payment of $3,200, after which the contractor absconded from the District without paying plaintiff, and has not returned.

The material provisions of the bond are as follows: "If the said principal shall voluntarily abandon said contract, or be lawfully compelled by the owner to cease operation thereunder, by reason of his nonperformance of any of its terms or conditions, then the surety shall have the right, in its option, to assume the said contract and to sublet to complete the same, and

if said contract shall be assumed by the surety, then as such
contract is duly performed, any reserve, deferred payments, and
all other moneys provided by said contract to be paid to the
principal shall be paid to the surety at the times and under the
same conditions as by the terms thereof, such moneys shall have
been paid to the principal had the contract been duly performed
by him; and if said owner shall complete or relet the said con-
tract, then any forfeiture provided in said contract against the
principal shall not be operative as against the surety, but all
reserves, deferred payments, and all other moneys provided in
said contract, which would have been paid to the principal had
he completed the contract in accordance with its terms, shall
be credited upon any claim the said owner may make upon said
surety."

*Mr. Charles A. Douglas, Mr. Thomas Ruffin,* and *Mr. Hugh
H. Obear* for the appellants.

*Mr. C. Clinton James* and *Mr. W. W. Millan* for the appellee.

Mr. Justice Van Orsdel delivered the opinion of the Court:

The conditions under which liens of this sort may be estab-
lished are stated in sec. 1240, D. C. Code [31 Stat. at L. 1384,
chap. 854], which provides: "All such liens in favor of par-
ties so employed by the contractor shall be subject to the terms
and conditions of the original contract, except such as shall re-
late to the waiver of liens, and shall be limited to the amount to
become due to the original contractor and be satisfied, in whole
or in part, out of said amount only; and if said original con-
tractor, by reason of any breach of the contract on his part, shall
be entitled to recover less than the amount agreed upon in his
contract, the liens of said parties so employed by him shall be
enforceable only for said reduced amount, and if said original
contractor shall be entitled to recover nothing said liens shall
not be enforceable at all."

The issue involved in this appeal, as urged by appellants, is

concisely stated in the opinion of the learned justice who heard the case below, as follows: "If the original contractor, instead of the surety, had finished the work, it is evident that the plaintiff's lien would have been valid. The contention of the surety is that the lien did not attach because, it is said, the owner had paid the original contractor for the work done by the plaintiff, and had done so before any notice of a lien had been given; and that the surety must be treated as having taken up the work remaining to be done under a new and separate relation between itself and the owners, exactly as if it had been a stranger to the contract; that the surety was under no obligation to pay the plaintiff, and that the owners' interest could not be charged, nor the fund due to the surety for the remainder of the work be held, to pay for what the plaintiff had contributed to the building."

The statute limits the right of a subcontractor to a lien upon money due the contractor from the owner at the time notice is given the owner. It is conceded that notice was not given in this case until after the first payment had been made to the contractor and he had abandoned his contract. It does not appear from the record that anything remained due the contractor on the date the owner was notified of the claim of plaintiff. But it is urged, and so found by the court below, that, by electing to assume the contract and complete the building, the surety stood in the position of an assignee of the contractor, and, as such, stepped into his shoes, and therefore became liable for plaintiff's claim.

We are not in accord with this contention. No privity existed between plaintiff and the surety. The surety contracted in its bond to protect the owner from loss at the hands of the contractor. When the contractor absconded, the owner had paid him in full. All had been done which the statute required to protect the owner against the assertion of a lien by plaintiff. Plaintiff was without remedy against the owner, and it is hard to conceive of a right of action against the surety, when all it obligated itself to do was to protect the owner from loss by the act of the contractor. The liability of the surety in this in-

stance cannot extend beyond the owner and the original contractor. Upon the abandonment of the contract, the surety was called upon by the owner not to make good any loss sustained by the failure of the contractor, but to step in and protect the completion of the building under the contract. When the surety elected to assume the completion of the work, as it had a right to do, it did not assume anything back of the first payment. For its own protection, and not because of any fictitious relation to the contractor, it assumed to take the work where the contractor left it on the owners' hands, and to complete it as it had assured the owner it would be completed by the contractor.

The rule is generally supported that "performance of a building contract by a surety after abandonment of it by the principal is not, in law, performance by the principal." 2 Brandt, Suretyship, sec. 759. In the case of *St. Peter's Catholic Church* v. *Vannote,* 66 N. J. Eq. 78, 56 Atl. 1037, where a contractor had been paid all that was due him at the time of the abandonment of his contract, except 20 per cent reserve to be paid upon final completion of the building, the sureties assumed the contract and completed the building. The sureties were held, as against certain materialmen, to be entitled not only to the price contracted to be paid by the owner, but also the reserve of 20 per cent, in so far as necessary to compensate them for their work. The court, considering this feature of the case, said: "The sureties did the work, not for the contractors, nor for the owner, but to relieve themselves, as cheaply as possible, from their obligation to the owner. What they did was by virtue of their contract with the owner. Their obligation as sureties was to the owner; they owed no debt to the contractors. What they did was not for the contractors. Nor can the contractors claim any portion of the contract price by reason of what the sureties did. * * * This right of the sureties so far as it concerns the owner and contractors is clear. I also think that the right of the sureties is superior to the claims of the materialmen and laborers. The claims of the latter reach only such moneys as was due at the time of the several demands and notices, or thereafter became due to the contractors. Nothing, aside from what

was already paid, became due unless the theory is adopted that the sureties were working for the contractors, and therefore, upon the completion of the building by them, a debt accrued to the contractors as if they had completed the work. But, as already observed, the sureties were not working for the contractors. There was no privity between them and the contractors. Their contract was with the owner as sureties for the default of the contractors. By the mere fact of performance of their contract they became equitable assignees of so much of the money held by the owner as was required to requite them for their expenditure." The doctrine announced by the New Jersey court is further sustained in *Masury* v. *Westwater,* 94 Ill. App. 30; *Weisemair* v. *Buffalo,* 57 Hun, 48, 10 N. Y. Supp. 569; *Larkin* v. *McMullin,* 120 N. Y. 206, 24 N. E. 447.

Counsel for plaintiff rely upon the case of *Smith* v. *Lange,* 81 App. Div. 192, 80 N. Y. Supp. 1078. But in that case, unlike the case at bar, there was a formal assignment of the contract from the original contractor to the surety. This relation we have found not to exist, even constructively, in the present case. True, the New York court suggested in the opinion that the situation would not be different where the surety assumed the contract and performed its conditions. But this declaration was not necessary to the decision of the case, and is contrary to the express holding of the higher New York court.

The rule here announced is equitable. The owner is entitled to equal protection with the subcontractor. The subcontractor should acquaint himself with the terms and conditions of the building contract. This information is made available by statute. D. C. Code, sec. 1243 [31 Stat. at L. 1385, chap. 854]. In the absence of anything to the contrary, we must assume that plaintiff possessed this information. If it knew when the next payment would be made to the contractor after it completed its work, it must be presumed to know the condition of the statute which expressly gave it a lien only against money owing the principal contractor at the time of notice of its claim to the owner. It could have given the owner notice the day it completed its work. It cannot shift its neglect, by assuming that

the contractor would not abandon or forfeit his contract, on to the shoulders of either the owners or the surety. The statute imposed upon it especially the duty of a timely disclosure of the existence of its claim, a fact known to it, but presumably not to the owners or the surety. This construction, in the absence of fraud or collusion, which do not appear in this case, can work no hardship upon the subcontractors or materialmen. It only imposes promptness in asserting their claims; while, if the contention of plaintiff were sustained, delay might work great hardship on both owner and surety.

The decree is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*