The Savannah and Charleston Railroad Company *vs.* Callahan.

---

The Savannah and Charleston Railroad Company, plaintiff in error, *vs.* Daniel Callahan, defendant in error.

1. The Act of 1869, so far as it may be considered as a legislative interpretation of the meaning of the Constitution, only gives a summary remedy for the enforcement of mechanics' and laborers' liens upon the property of their employers, when the debt is due for the labor actually performed by them, and for the materials furnished, with which and upon which the labor has been performed.

2. Though contractors may be mechanics, yet this fact does not entitle them to the benefit of the provisions of the Act of 1869, if the work is done by them as contractors, through the labor of others employed by them for that purpose.

Mechanics' and laborers' lien. Contractors. Before Judge Schley. Chatham Superior Court. May Adjourned Term, 1872.

McDowell & Callahan instituted proceedings against the Savannah and Charleston Railroad Company to foreclose a mechanics' and laborers' lien for $26,336 38. The execution issued thereon was levied upon the property of the defendant.

A counter-affidavit was filed and the property replevied. Pending the litigation the death of McDowell was suggested, and the cause ordered to proceed in the name of Callahan, as surviving partner.

For the remaining facts, see the decision.

JACKSON, LAWTON & BASINGER, for plaintiff in error.

We understand this Court to have established the rule that the "mechanics and laborers," to whom a lien is given by the 30th section of Article I. of the Constitution, and by the Act of 1869 in pursuance thereof, must be those who perform labor in their own persons—with their own hands— or who, in so performing labor, furnish materials for the work : 44 Georgia Reports, 306 ; 45 *Ibid.*, 561 ; 46 *Ibid.*, 112, 466–8 ; 27 Missouri, 39.

And the evidence for the plaintiff below—the admissions of Callahan himself—showed conclusively that neither he, nor McDowell, nor any other person interested as a contractor, performed labor according to the construction of the Constitution and Act of 1869, adopted by this Court.

The view of the lien taken by this Court seems to have had the assent of the General Assembly in later legislation : Acts of 1872, pam. 47 ; Acts of 1873, pam. 42.

HARTRIDGE & CHISOLM, for defendant.

The Constitution gives the lien to two classes, viz : *mechanics* as a class and *laborers* as a class. An overseer, though not a mechanic, is entitled to the lien if he works by the day : Rust, Johnson & Co. *vs.* Rebecca Billingslea *et al;* 44 Ga., 308.

A mechanic who performs labor and furnishes materials, has a lien, although a vender of machinery has not : R. H. Footman, assignee, *vs.* Pussy, Jones & Co., 45 Ga., 563.

That two classes were intended, is also shown by another provision of the Constitution, providing that laborers on a railroad are protected in their lien even against the claims of the State. This provision also recognizes that the lien attaches to a railroad : New Code, section 5068.

The lien is not given to the mechanic alone who does the manual work and labor unassisted. If this were true, it would have been unnecessary to name them, because the term laborer would have embraced them. The mechanic has the lien not only for his own labor, but for the labor performed by others under him, and for the material furnished.

When the Constitution was adopted, Irwin's Revised Code was also adopted: New Code, section 5145.

When the framers of the Constitution used the term mechanic, it is reasonable to suppose that they meant such mechanics as had already been the subject of legislation and mentioned in that body of laws known as Irwin's Revised Code. Who were they?

All mechanics * * * shall have a lien on every house or other property * * * for *work done* or material furnished. * * * Irwin's Revised Code, section 1959.

Was it the intention of that Act to give a lien to such mechanics only who built a house with their own hands unassisted? These mechanics were expected to be *contractors:* Irwin's Revised Code, section 1963.

All mechanics shall have a lien on all personal property manufactured or repaired by them, to the extent of the work done and materials furnished, but such lien shall cease on delivery: Irwin's Revised Code, sec. 1967.

If the owner of the property in such case should refuse to pay and the mechanic to deliver, could his possessory lien, or right to detain, be defeated by proof that the foreman of his shop did the work?

Again, all accounts of merchants, tradesmen and mechanics, which, by custom, become due at the end of the year, bear interest from that time upon the amount actually due, whenever ascertained: Irwin's Revised Code, sec. 2031.

The mechanic, then, meant by the Code in force before and at the time of the adoption of the Constitution, was one who did work or performed labor, either individually or by his agents and servants. He was not considered a day laborer, merely; he was treated as a contractor, and his accounts were

placed upon a footing with those of merchants, tradesmen and others; they were not due and payable daily. The policy of the State seems to have been two-fold: first, to encourage mechanical skill and talent, and secondly, to secure to the laborer his wages.

If, then, the term mechanic, as used in the Constitution, has the same meaning as in the Code, for what does the Constitution give the lien? It is certainly for labor performed by him, his agents or servants, *or* for materials furnished. He may have the lien for the labor alone, or the materials furnished, or for both. In the case of R. H. Footman, assignee, *vs.* Pussy, Jones & Company, this Court alluding to the constitutional lien quoted from the Act of 1869, page 135, in which the word *and* is used instead of *or*. The constitutional reading must control and construe the Act. If, then, the testimony disclosed the facts, as stated in the affidavit, that Callahan & McDowell were both of them practical mechanics, bridge builders, and as such, became railroad contractors, and as such, performed labor, either individually or through their servants and agents, or furnished materials, according to this contract with defendant, in the construction of the railroad which they were engaged to build, the Court did not err in refusing to dismiss plaintiffs' case, and in allowing the jury to pass upon these facts. Others may have been interested, but it appears from the contract that the defendant contracted with the *mechanics* only, and relied upon their skill and ability.

WARNER, Chief Justice.

On the 10th day of May, 1869, the plaintiffs made a written contract with the defendant to construct, in a substantial and workmanlike manner, all that portion of the defendant's railroad from the west end of Coosawhatchie trestle to its junction with the Central Railroad in Georgia, including the construction of a bridge over the Savannah river, and to furnish all necessary materials for the construction of said road and bridge, in accordance with the specifications contained in said

contract, and on the full and faithful completion of said contract by the plaintiffs as specified therein, the defendant covenanted to pay them therefor the sum of $475,000 00 in its first mortgage seven per cent. bonds. The road to be constructed was part in South Carolina and part of it in Georgia. The plaintiffs, on the 2d day of April, 1870, foreclosed a mechanics' and laborers' lien for the sum of $26,336 38, which they claimed to be due them by the defendant under said contract, an execution issued, and was levied on the defendant's railroad and bridge in this State. The defendant filed a counter-affidavit, denying that the plaintiffs had any lien as mechanics or laborers in contemplation of the law, but were contractors, and also denied its indebtedness to the plaintiffs. On the trial of the issue thus formed, in the Superior Court, after hearing the evidence for the plaintiffs, the defendant made a motion to dismiss the proceedings, on the ground that it appeared from the plaintiffs' own showing that they were not mechanics and laborers in constructing the railroad and bridge for defendant, but were contractors only, employing others as the actual laborers to do the work under their direction, and, therefore, were not entitled to the lien claimed, and also moved to dismiss the proceedings on other grounds. The motion to dismiss the proceedings was overruled by the Court. The trial then proceeded, and after hearing the defendant's evidence, and the charge of the Court, the jury found a verdict for the plaintiffs for $20,000 00. A motion was made for a new trial, on the ground that the Court erred in overruling the motion to dismiss the proceedings, and on various other grounds as set forth in the record, all of which were overruled, and the defendant excepted.

1. The main and controlling question in this case is, whether the plaintiffs had a mechanics' and laborers' lien on the property of the defendant which could be foreclosed and enforced by the summary remedy, as provided for in the Act of 1869, to carry into effect that provision of the Constitution of 1868 upon the subject of the lien of laborers and mechanics. The Constitution only declares that mechanics and laborers shall

The Savannah and Charleston Railroad Company vs. Callahan.

have liens upon the property of their employers for labor performed or materials furnished, and left it to the Legislature to provide for the summary enforcement of the same. This clause of the Constitution could not have been enforced by the summary remedy now claimed by the plaintiffs, but for the Act of 1869. The terms laborer and mechanic, as employed in the Constitution and in the Act of 1869, must be presumed to have been employed in the ordinary sense and meaning of those words. Who is a mechanic? A mechanic is a person whose occupation is to construct machines, or goods, wares, instruments, furniture and the like. Who is a laborer? A laborer is one who labors in a toilsome occupation, a man who does work that requires little skill, as distinguished from an artisan. Such is the definition given by Webster of the words "mechanic" and "laborer." A "builder" is defined by the same author to be one who builds, one whose occupation it is to build, an architect, a shipwright, a mason, etc. If we strictly construe the word "mechanics" as used in the Constitution, it may well be doubted whether the lien created in their favor upon the property of their employers for labor performed, or for materials furnished, was intended to embrace any other property than such as was repaired, or mainly constructed by their labor, with materials furnished by the mechanic in the exercise of his trade and calling. But be that as it may, it is very clear, we think, that the Act of 1869, so far as it may be considered as a legislative interpretation of the meaning of the Constitution, only gives a summary remedy for the enforcement of mechanics' and laborers' liens upon the property of their employers when the debt is due for the labor *actually performed* by them, and the materials furnished by them, with which, and upon which, the labor has been performed for the benefit of the employer. Laborers and mechanics shall have a lien upon the property of their employers for labor *performed* and for materials furnished, is the language of the Act. For labor performed by whom? By the mechanic who claims the lien, and has furnished the materials with which he has performed the labor for the benefit

of his employer, and *not* for labor performed by *other persons.* The lien is given to secure the debt due to the laborer or mechanic for his *own labor* and materials furnished by him in the performance of *the* labor for which the debt is due. At the time of the passage of the Act of 1869, all mechanics who had taken no personal security therefor, had a lien on every house, or other property, and the premises to which it was attached, for work done or materials furnished in building or repairing such house, or other property, of superior dignity to any other incumbrance, when recorded, as prescribed by the Code, and could enforce the collection of the debt due them by suit, in the manner as provided thereby : Code, secs. 1959 to 1964, inclusive. The mechanics' lien for labor performed and materials furnished, contemplated by the Act of 1869, was obviously intended for a different class of mechanics' liens than those already provided for, to-wit: that class where the mechanic actually performed the manual labor for their employers, and furnished the materials on which that labor was performed for the benefit of their employers, and not where the mechanic was a contractor only, and not a laboring mechanic. The Act of 1869 was intended to give mechanics a lien for the labor actually performed by them, and for materials furnished in the performance of such labor.

2. It appears from the evidence in this case that the plaintiffs were railroad contractors, and in that capacity made the contract with the defendant set forth in the record. It is true the evidence shows that both the plaintiffs were mechanics, but mechanics can be contractors as well as those who are not mechanics. The contract was not made with them as mechanics who were to perform the labor themselves, and there is no pretense that they have done so.

One of the plaintiffs stated that although he did not labor every day, he did as he always had been doing ever since he had been building railroads, he taught others how to do it; he very often took hold of a shovel and showed a man how to shovel earth—often a wheel-barrow to show them, and would take an auger or a cross-cut saw and lay out trestle timber,

and the other plaintiff was overseeing, and did just as he did. It is very apparent from the contract itself, and the evidence of the plaintiffs, that the debt claimed to be due them by the defendant was not a debt due for labor performed by them and materials furnished as mechanics, for which they had a lien that could be foreclosed and enforced against the property of the defendant in the summary· manner as provided by the Act of 1869, the debt claimed to be due them by the defendant was a debt due them as *contractors* and not a debt due them as mechanics for labor performed by them as such, and materials furnished, as contemplated by, the Act of 1869, and it would be a gross perversion of the terms and meaning of that Act so to construe it. By the terms of the contract made with the defendant the plaintiffs were to receive, at stated periods, its first mortgage bonds for what might be due them, and the evidence shows that they have already received a large amount of the defendant's bonds and negotiated them on· the faith of the lien created thereby on the defendant's road, and now seek to enforce a mechanics' and laborers' lien under the Act of 1869, of superior dignity to all other liens, sell the defendant's road, or so much thereof as is in this State, and thus defeat the lien of the mortgage bonds thereon, which they have received and negotiated to *bona fide* purchasers thereof. That is the plaintiff's case as made by the record before us, and the facts therein contained will furnish the best commentary on the entire transaction. The plaintiffs, when they made the contract to build the defendant's road, did not rely on the mechanics' and laborers' lien for labor performed and materials furnished by them as provided for by the Act of 1869, but on the contrary expressly stipulated in. their contract that the debt due by the defendant to them by the terms of that contract, should be paid in the first mortgage bonds of the defendant on its road ; that was the lien the plaintiffs expressly contracted for, to secure the payment of the debt due by the defendant to them ; and being contractors and not laborers, as contemplated by the Act of

1869, they are bound by their bargain as stipulated in their contract.

The motion to dismiss the proceedings after the introduction of the plaintiff's evidence, was in the nature of a demurrer to the sufficiency of that evidence, under the law, to have authorized the summary proceeding against the property of the defendant, which had been instituted by the plaintiffs for the collection of the debt alleged to be due them by the defendant. In our judgment, the Court erred in overruling the defendant's motion to dismiss the proceedings. The view which we have taken of this branch of the case will finally dispose of it, and, therefore, it is unnecessary to notice the other points made on the argument.

Let the judgment of the Court below be reversed.