(18 Misc. Rep. 533.)

PEOPLE ex rel. BECK v. BOARD OF ALDERMEN OF CITY OF BUFFALO.

(Supreme Court, Special Term, Erie County. November 6, 1896.)

1. MUNICIPAL CORPORATIONS—BUILDING INSPECTOR—QUALIFICATIONS.
   One who has for more than five years been a student of architecture and building construction, and has planned, worked on, and superintended the construction of buildings of different kinds, inspecting the work of construction in all its branches, is a "practical building mechanic," within a city charter prescribing the qualifications of inspectors of buildings.

2. OFFICERS—CERTIFICATE OF CIVIL SERVICE COMMISSION—COLLATERAL ATTACK.
   Under the civil service law, making the civil service commission sole judge as to the character, fitness, and qualifications of candidates for appointment to public offices, the action of the commission certifying to the qualifications of a candidate after due examination and inquiry is judicial in character, and cannot be collaterally impeached.

3. SAME—PAYMENT OF SALARY—MANDAMUS.
   Where the board of aldermen have wrongfully withheld the warrant for the salary of an employé of the city duly appointed under the charter, mandamus will lie to compel its issue.

Application by Howard L. Beck for a writ of mandamus directing the board of aldermen of the city of Buffalo to issue to him a warrant for his salary as building inspector. Granted.

Simon Fleishmann, for relator.
Charles L. Feldman, for board of aldermen.

WHITE, J. This is an application by the relator for a writ of peremptory mandamus under section 2070 of the Code of Civil Procedure, commanding the said board of aldermen to direct a warrant to be drawn in favor of the relator for the sum of $41.66, in payment for services rendered by him to the city of Buffalo as an inspector of buildings for the latter half of the month of September last. The undisputed facts, as disclosed by the papers presented, are in substance as follows: On or about July 15, 1896, the relator was examined by the civil service commission of Buffalo as a candidate for the position of building inspector. He passed the examination to the satisfaction of the commission, which certified him to the board of public works as a practical building mechanic, fit and qualified to perform the duties of a building inspector. Thereafter, and on or about August 1, 1896, the said board of public works appointed the relator an inspector of buildings under and

42 N.Y.S.—35

by virtue of subdivision 4 of section 273 of the city charter. The relator thereupon entered upon, and has ever since continued in the discharge of, his duties as such inspector. His actual qualifications and fitness for the position are not questioned. On September 21, 1896, the board of public works certified to the board of aldermen that there was due to the relator $41.66 for services as such inspector of buildings for the last half of that month, and recommended that a warrant be drawn therefor. Instead of ordering the warrant drawn as recommended, the board of aldermen has from that time to this refused, and still refuses, to order the warrant drawn, on the sole ground that the relator was not, when appointed, and is not now, legally qualified for appointment to the position to which he was appointed, and the duties of which he is discharging. The board of aldermen has referred the claim of this relator for his half month's salary to its committee on claims, as an equitable claim, and said committee has now the claim under consideration. But the board of aldermen has already made an investigation as to the legality of the appointment of the relator, and has determined that it was illegal. This investigation was made without any power to make a binding decision concerning the subject-matter in the board of aldermen. For more than five years prior to his appointment as a building inspector, the relator has been a student of architecture and building construction, theoretical and practical, in the office of well-known architects, and has worked upon buildings of different kinds, has made plans for, and superintended the construction of, such buildings, and has inspected the work of their construction in all its branches. He is thoroughly familiar, both theoretically and practically, with all the details of the mechanism and construction of the buildings, and also with the quality and uses of all the materials required in buildings, as well as with the proportionate strength of walls, timbers, columns, and supports, and the strain and pressure to which they may be subjected. For many years, in this country and elsewhere, the superintending and inspection of buildings by persons other than the laborers occupied thereon has been and is occupation by itself. Such are the substantial facts upon which the relator bases his demand for this writ.

Under the charter of the city of Buffalo, there is a department of public works, within which there is a bureau of buildings. The head of the department of public works is the board of public works, composed of three commissioners. The bureau of buildings, under the board of public works, has charge of the construction, alteration, and repair of all buildings in the city. The charter provides that the board of public works shall appoint inspectors of buildings, who shall be under the control of the heads of the bureau of buildings, and that such inspectors shall be practical building mechanics of not less than five years' experience in their trade. As has been stated, the board of aldermen base their refusal to order a warrant drawn in favor of the relator upon the sole ground that the relator, at the time of his appointment, was not, and is

not now, legally qualified to fill the position of building inspector, because, as it alleges, he was not then, and is not now, a "practical building mechanic of not less than five years' experience in his trade." In my opinion, the attitude of the board of aldermen is not justified for two reasons, either of which is conclusive against them. The first reason is that, as a matter of fact, the relator is, according to the papers presented, a practical building mechanic of not less than five years' experience in his trade; and the second is that, as a matter of law, ineligibility for the position cannot now be established in the way the board seeks to accomplish that end. The words of the charter prescribing the qualification of an inspector of buildings should receive such reasonable interpretation as will make them effective for the accomplishment of the ends sought, and that is, among other things, to exclude from the position in question inexperienced, unskilled, unfit, and incompetent persons, and to secure the services of persons having a practical knowledge of the buildings; and it would seem that the qualifications of the relator, as disclosed by his own affidavit, which is conceded to be true by not being denied, are of a high order, and that he is fully competent to pass upon the character and quality of all the material and workmanship which enter into the construction, alteration, and repairing of buildings of all kinds. It seems to me that his description of himself and of his qualifications pictures to the mind a practical mechanic, who is especially skilled in the art of building, and acquainted with the rules and methods observed and pursued by those engaged in constructing, altering, and repairing buildings of all kinds, and possessing the skill to apply those rules, and to adopt and follow those methods. He is, according to the record, skilled in all the trades which have to do with the construction of buildings, and such a person, according to the Century Dictionary, is an artisan, a handicraftsman, and a mechanic, within the meaning of the charter. The relator is clearly a "practical" mechanic, because he has devoted himself for several years to the actual drawing of plans for, and the construction of, buildings of various kinds. I am of the opinion that it is possible for a person without legs or arms to become a practical mechanic; that is to say, it is not necessary for a person to perform manual labor with the tools of any special trade or occupation to become such a mechanic. If such a person is competent to devise, direct, and supervise the construction of all kinds of buildings in all their parts, he is at once an artisan, a handicraftsman, and a mechanic. If he does all those things, he is a "practical mechanic," whether he has ever touched a tool of any particular trade or handicraft or not. The expression "trade" applied to the calling of a stationary engineer in rule 30 of the civil service rules of this city is certainly not more accurate than the use of the word "trade" as describing the calling of a "building mechanic." Pursuant to the civil service law of the state, the mayor of Buffalo has prescribed regulations for the admission of persons into the civil service of the city, which are designed to promote the efficiency of the service, and to ascertain

by examination and inquiry the fitness of candidates in respect to
character, knowledge, and ability for the positions which they seek
to fill. The relator passed the examination prescribed by those reg-
ulations, and his fitness, knowledge, and ability for the position
which he now holds was certified by the civil service examiners to
the board of public works, as required by law, whereupon he was,
in conformity with the provisions of the law, in form, duly ap-
pointed an inspector of buildings, and has ever since discharged
the duties of the office to the satisfaction of the city.

The right of the relator to obtain the position to which he has
been appointed by the board of public works, by virtue of good
character, fitness, and special qualifications for the place, is a
valuable personal right, guarantied and protected by the law of
the land. Emmitt v. Mayor, etc., 128 N. Y. 117, 28 N. E. 19. The
civil service commission of the city is made sole judge as to such
character, fitness, and qualifications. It proceeds by examination
and inquiry. It exercises its judgment and discretion in the prem-
ises. Therefore its action is judicial in its nature; and it is a
well-settled rule of law in this state that such action cannot be
impeached collaterally, but only by direct proceedings instituted
for the purpose. So that the question whether the relator is le-
gally qualified to fill the position he occupies or not, is not open
for consideration by the board of aldermen. The board is bound
in that respect by the decision of the only tribunal authorized to
pass upon that question in the first instance, the civil service com-
mission. If the commission has violated the law, its error can
be easily corrected in the manner and by the means provided by law.
for that purpose. While the certificate given by the commission to
the relator remains unimpeached, his right to occupy the position of
an inspector of buildings cannot be successfully disputed by the
board of aldermen. The common council of the city cannot undo
or nullify the action of the civil service commission, whose cer-
tificate of fitness the relator holds. Now, as to the propriety of
granting the writ asked for, in so far as this case is concerned,
the charter provides that the pay account of the relator shall be
certified to the common council by the board of public works, and
on receipt of same the common council shall order the proper war-
rant for the payment of the account to be drawn on the treasurer,
and the ordinances provide that his salary shall be paid semimonth-
ly during the time he shall occupy his position as inspector of build-
ings. The relator's pay for the latter half of September has been
certified by the board of public works, and it has been received by
the board of aldermen, and all the steps and proceedings required
to be taken by law prior to the ordering by the board of aldermen
of a warrant to be drawn in his favor for his half month's salary
have been taken; and the only reason why the warrant has not al-
ready been ordered drawn is, as hereinbefore stated, that the said
board of aldermen claims the relator was and is ineligible to the
office or position of inspector of buildings. The language of the
charter is that upon the certificate of a pay account, such as the

one in question, by the board of public works to the common council, it (the common council) shall order the proper warrants to be drawn; and, while I do not believe the courts would command it to perform that act in a case not free from doubt as to the justice and validity of the pay account certified, in a case like the one in hand where there is no dispute as to the facts, and the right sought to be enforced seems clear, relief by mandamus is proper, even if an action would lie against the city upon the refusal of the board of aldermen to order the warrant drawn. From my point of view, under the circumstances, the act by the board of aldermen of ordering the warrant drawn is purely ministerial. It is an official act, enjoined by statute, which in due course of procedure must necessarily precede the right and the ability of the relator to demand his pay; and the right to enforce its performance by mandamus seems to be established by the cases of Dannat v. Mayor, etc., 66 N. Y. 585; Ready v. Mayor, 144 N. Y. 63, 38 N. E. 1006; People v. Havemeyer, 3 Hun, 97; People v. Crissey, 91 N. Y. 616; People v. Board of Sup'rs of Delaware Co., 45 N. Y. 196; Swift v. Mayor, etc., 83 N. Y. 528; People v. Board of Sup'rs of New York, 32 N. Y. 473; People v. Board of Police, 75 N. Y. 38.

The mandamus asked for by the relator must therefore issue.