# JAMES B. LAMBIE COMPANY v. BIGELOW.*

### APPEALS; STATUTES; MECHANICS' LIENS.

1. An objection in an equity suit by the appellant, made for the first time in this court, is too late when to the effect that the testimony of certain witnesses for the appellees was taken without notice to counsel for the appellant, and that it was taken as surrebuttal testimony when in effect it was a continuation of appellees' direct evidence; especially where the record shows that due notice was given to counsel for the appellant, who, in a letter to the examiner, stated he could not be present, but asked that his right to cross-examine be reserved.

2. While a statute creating a mechanics' lien is to be reasonably construed so as to effectuate, if possible, the legislative intent, those who would claim its protection cannot be excused from performing precedent conditions.

3. Where subcontractors have filed no notice, and have failed to notify the owner, of their intention to assert a mechanics' lien against the property, for the improvement of which they have supplied materials or labor, the owner has the right not only to make payments to his contractor according to the terms of his contract, but also to make him advance payments, provided such advance payments are made in good faith, and not for the purpose of defeating the lien of the subcontractor; and if all payments to the contractor, including such advance payments, equal or exceed the contract price, the subcontractors have no right to liens. (Construing D. C. Mechanics' Lien law, D. C. Code, secs. 1237, 1239–1244, 31 Stat. at L. 1384, 1385, chap. 854.)

4. Bad faith toward the subcontractors on the part of the owner of property in making payments to his contractor, who is engaged in making improvements thereon under a building contract, cannot be presumed from the mere fact that the payments are advance payments under the contract; and the fact that such payments are made for the purpose of enabling the contractor to complete the work within the time fixed by the contract, so as to prevent its breach and consequent damages, will negative the idea of bad faith. (Construing D. C. Code, sec. 1244.)

---

*Mechanics' liens.—On the question of payment to contractors or subcontractors as affecting liens of subordinate claimants, see note to *French* v. *Bauer*, 20 L.R.A. 560.

5. A provision in a building contract requiring a certificate of the architect
to entitle the contractor to each instalment of the contract price is
for the protection of the owner, and not for the protection of sub-
contractors; and the failure of the owner to require such a certificate
in a given case is merely a circumstance to be taken in consideration
in a suit of subcontractors to establish mechanics' liens against the
property, along with other facts and circumstances of the case, in
determining whether payments on such certificates were made in
good faith.

No. 1993.   Submitted October 20, 1909.   Decided November 15, 1909.

HEARING on an appeal by the complainants from a decree of
the Supreme Court of the District of Columbia dismissing a
bill in equity to enforce mechanics' liens.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the
District holding that appellants James B. Lambie Co., T. Ed-
ward Clark, C. A. Schneider's Sons, Bealor & Schmid, and
Warren Brothers, are not entitled to enforce the several me-
chanics' liens claimed by them, and dismissing the bill.

On July 9th, 1904, Albert S. Bigelow, one of the appellees,
entered into a contract with the building firm of S. Albert C.
Galloway for the erection of a four-story and cellar apartment
house for $17,661.   Hunter and Bell were to be the architects.
The work was to be completed, and the building ready for oc-
cupancy by November 1st, 1904.   Payments were to be made
as the work progressed to Thomas R. Riley, for the contrac-
tors, and only upon certificates of the architects, final payment
to be made within fifteen days after the completion of the build-
ing.   Failure to prosecute with promptness and diligence, or
failure in the performance of any of the terms of the contract,
the same to be certified by the architect, worked a forfeiture
of the contract, after three days' written notice to the con-
tractors,—in which event the contractors were not to be entitled

to receive any further payment under the contract until the work should be wholly completed, at which time, if the unpaid balance of the amount to be paid the contractors should exceed the expense incurred by the owner, in finishing the work, such excess was to be paid to the contractors, but if such excess should exceed such unpaid balance the contractors were to pay the difference to the owner.

Thirteen thousand five hundred dollars was paid the contractors upon the certificates of the architects, and in strict compliance with the provisions of the contract. Advance payments, in sums ranging from $100 to $800, and aggregating considerably more than the balance due under the contract, were made upon the written request of said Riley, but without certificates of the architects, and without notice to subcontractors. These payments covered a period from September, 1904, to February 4th, 1905. On February 11th, 1905, the contractors were notified that unless the building was completed by the 16th of that month, the contract would be terminated. The building not being then completed, the contract was terminated, and the owner proceeded to complete the construction of his building at considerable additional cost. The building was practically completed March 15th, 1905. Appellants were subcontractors, and furnished labor and material for the construction of the building. Their lien notices were filed as follows:

February 27, 1905—James B. Lambie Company .... $385.45
March 2, 1905—T. Edward Clark ...............    84.85
March 3, 1905—C. A. Schneider's Sons .......... 164.90
April 4, 1905—Bealor & Schmid ............... 880.00
May 12, 1905—Warren Brothers ............... 179.00

From the foregoing statement it appears that when the above notices were filed the contract between the owner and contractors had been terminated, and a sum considerably in excess of the amount due thereunder had been paid said contractors. The record shows that not one of these subcontractors had

ever inquired as to the terms of the principal contract, and that, with one exception, not one of them had ever even spoken to the owner about his claim. C. A. Schneider, for his firm, testified in substance that he had a conversation with Bigelow some time late in December, 1904, concerning the firm's claim against the contractors; that Bigelow then gave him to understand that he had plenty of money to pay all claims; that subsequently Bigelow told him that he really did not know how he stood with the contractors. Bigelow denied telling Schneider that he had funds sufficient to pay all claims, and testified that the only conversation he had with Schneider on the subject was at a time subsequent to the termination of the contract with Galloway. Subsequently, Schneider was recalled for further cross-examination, and admitted that it was the day before his firm filed its lien notice that he asked Bigelow about the state of his account with Galloway. This disposes of Schneider's testimony.

The reason given by Bigelow for making advance payments is that Galloway was unable to proceed with the work, owing to his inability to pay his help, and meet other necessary expenses under the contract, and that all advances were made for the sole purposes of enabling him, if possible, to complete the contract. Bigelow testified that in each instance when he made an advance payment he endeavored to restrict Galloway to the lowest possible sum. Galloway himself testified that after he commenced work under the contract carpenters' wages increased, and that in addition there was considerable delay in obtaining material; that as workmen were very scarce that year, he was compelled to continue his whole force on the pay roll, because if he dismissed any men he could not fill their places; that these unforeseen contingencies greatly embarrassed him, and compelled him to ask for advance payments in order to continue the work. He further testified that all the money from these advances went to pay for labor upon the building, and to the subcontractors.

*Mr. Leonard J. Mather* for the appellants.

*Mr. Leo Simmons* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

In the first assignment of error appellants object to the consideration by the trial court of the testimony "of Stephen A. Galloway and of Albert S. Bigelow, because their testimony was given *ex parte* without notice,—save to counsel for C. A. Schneider's Sons, who was unavoidably absent,—and without opportunity to cross-examine, and further because it was irregularly and improperly taken under the guise of surrebuttal testimony, when in reality it was nothing short of a continuation of appellees' direct defense evidence."

The record shows that due notice was given to counsel then representing appellants, who in a letter to the examiner asked that his right to cross-examine be reserved. It does not appear that he subsequently asserted such right, or that he brought the matter to the attention of the trial court in any way. Having then offered no objection to the consideration of this testimony, it is too late for him to raise the question here. He should have raised the question below by motion to suppress.

The second and remaining assignment of error challenges the action of the court in refusing relief and dismissing the bill. This assignment brings into review the provisions of the Code respecting mechanics' liens, and particularly the provisions entitling subcontractors, materialmen and laborers, upon performance of certain conditions, to such liens.

Sec. 1237 of the Code [31 Stat. at L. 1384, chap. 854] specifies that a contractor shall be entitled to a mechanics' lien upon the building and lot of ground upon which the same is erected for the reasonable value of the work, and materials furnished by him for and about the erection, improvement, repair, or addition to such building, etc., "provided that the person claiming the lien shall file the notice" herein prescribed. In the following section it is provided that any such contractor "wishing to avail himself of the provision aforesaid, whether his claim be due or not, shall file in the office of the clerk of

the supreme court of the District, during the construction or within three months after the completion of such building * * * a notice of his intention to hold a lien on the property hereby declared liable to such lien for the amount due or to become due to him," etc.

Sec. 1239 provides that "any person directly employed by the original contractor, whether as subcontractor, materialman, or laborer, to furnish work or materials for the completion of the work contracted for as aforesaid, shall be entitled to a similar lien to that of the original contractor upon his filing a similar notice * * * subject, however, to the conditions set forth in the following sections:"

Sec. 1240 ordains that all liens in favor of parties employed by the contractor shall be subject to the terms and conditions of the original contract, except such as shall relate to the waiver of liens, and that if "said original contractor, by reason of any breach of the contract on his part, shall be entitled to recover less than the amount agreed upon in his contract, the liens of said parties so employed by him shall be enforceable only for said reduced amount, and if said original contractor shall be entitled to recover nothing said liens shall not be enforceable at all."

Sec. 1241 imposes upon the subcontractors, and other persons employed by the contractor, as aforesaid, the additional duty of serving notice upon the owner of the property upon which the lien is claimed, and provides that a failure to serve the additional notice will entitle the owner to make payments according to the terms of his contract.

Sec. 1242 imposes upon the owner the duty, "*after notice shall be filed by said party employed under the original contractor, and a copy thereof served upon the owner or his agent, as aforesaid,*" of retaining, out of any subsequent payments becoming due to the contractor, a sufficient amount to satisfy any indebtedness due from said contractor to the said subcontractor.

Sec. 1243 entitles the subcontractor to know the terms of the contract between the owner and the contractor.

Sec. 1244 is as follows: "Advance Payments. If the owner, for the purpose of avoiding the provisions hereof, and defeating the lien of the subcontractor, or other person employed by the contractor, as aforesaid, shall make payments to the contractor in advance of the time agreed upon therefor in the contract, and the amount still due or to become due to the contractor shall be insufficient to satisfy the liens of the subcontractors, or others so employed by the contractor, the property shall remain subject to said liens in the same manner as if such payments had not been made."

A mechanics' lien has no existence outside the statute creating it. It was not recognized at common law, nor was it allowed in equity. It is founded upon the just and natural consideration that a party who has enhanced the value of property by contributing thereto labor and materials shall be entitled to a preferred claim on such property, to the extent of his contribution. While the statute creating such a lien is to be reasonably construed so as to effectuate, if possible, the legislative intent, we are not at liberty to excuse those who would claim its protection from the performance of precedent conditions. As was said by Mr. Justice Field in *Davis* v. *Alvord,* 94 U. S. 549, 24 L. ed. 285: "Whilst the statute giving liens to mechanics and laborers for their work and labor is to be liberally construed, so as to afford the security intended, it cannot be too strongly impressed upon them, that they must not only bring themselves by their notices, as was done in this case, clearly within the provisions of the statute, but they must be prepared, if the priority of their lien be disputed, to show a compliance with those provisions, and to fix with certainty the commencement and completion of their work."

The provisions of the Code above set forth are free from ambiguity. The conditions imposed are just and reasonable. The contractor is required only to file his notice with the clerk of the supreme court of the District. The reason why he is not required to give notice to the owner is obvious. Being a party to the contract the owner is presumed to be familiar with its terms, and the claims of the contractor thereunder. Sub-

contractors, in these days of industrial development, are so numerous that to charge the owner with notice of each would impose an unreasonable burden upon him. The law therefore declares that in addition to filing the notice required of contractors the subcontractor shall notify the owner of his intention to hold a lien, and the nature and extent of the claim. Prior to the filing of such notice the subcontractor has only an inchoate right,—an unperfected lien. Until such notice is filed the owner has absolute authority to make payments to his contractor according to the terms of his contract. A fair inference to be deduced from the statute is that the owner, upon the failure of the subcontractor to file the required notice, may make advance payments, providing that such payments are made in good faith and not for the purpose of defeating the lien of the subcontractor. In this case the owner, when he made the advance payments, had no notice that the subcontractors intended to claim liens, and there is absolutely nothing in the record showing bad faith on his part. On the contrary, the record shows that unless advance payments had been made the contract would have been terminated before the date when the building should have been completed, and that in all probability the ensuing damage and loss to the owner would have exceeded by far the amount then due the contractor. In other words, that there would have been nothing left for the subcontractors.

Under the terms of the statute, bad faith cannot be presumed from the mere fact of advance payments. Something more is necessary to support such an inference. If the evidence before us showed that there was no occasion for advance payments, and that they were made with knowledge on the part of the owner that the subcontractors were not being paid, a different case would be presented. In such a case bad faith might be presumed. In *Lauer* v. *Dunn,* 115 N. Y. 405, 22 N. E. 270, 80 per cent of the contract price was to be paid as the work progressed, and the remaining 20% was to be paid after its final completion. The contract also entitled the owner to retain double the amount of

any lien that should exist at any time a payment was to be made. Upon the completion of the work $750 was due the contractor. Thereafter the contractor drew an order upon the owner, directing him to pay the subcontractor $700, and to charge the same to the contractor. This order was not paid when presented, and a few days thereafter lien notices were filed by various parties. Suit was brought upon said order, and plaintiff was nonsuited. The court of appeals said: "The liability of the property owner to lienors is limited by the lien law to the sum remaining unpaid under the contract at the time of the filing of the lien. Even where the owner has paid .in advance of the terms of his contract, in order to hold him to any liability for so doing, it must be made to appear that he did so for the purpose of avoiding the provisions of the act or by some collusion. * * * No honest payment of his debt by the owner, in conformity with the contract between him and the building contractor, can be attacked by subsequent lienors. The question, therefore, here, is, whether the order, which the contractor gave to these plaintiffs, amounted in law to an assignment *pro tanto* of the fund in the owner's hands."

*Tommasi* v. *Archibald,* 114 App. Div. 838, 100 N. Y. Supp. 367, was a case where advance payments had been made by the owner to the contractor. The statute in respect to advance payments was very similar to the provisions of our Code respecting such payments. The court, speaking through Mr. Justice Jenks, said: "As I read the present statute, it does not prohibit payments made before they became due, but only such payments when made for the *purpose* of avoiding the provisions of the act. It is not enough that such payments may impair the effect of the statute, and thus *pro tanto* avoid it, but they must also have been made with the purpose to avoid it."

In *Schneidhorst* v. *Luecking,* 26 Ohio St. 47, the facts were almost identical with the facts in this case, and it was held that the money advanced the contractor to enable him to go on with the work did not constitute payments made to defeat the provisions of the mechanics' lien law.

To sustain the conclusions of appellants in this case would be

to do violence to the plain import and meaning of the statute. In the absence of the notices required of subcontractors advance payments are clearly recognized, unless made for the purpose of avoiding the provisions of the statute. We have found that the payments here challenged were not made for that purpose, but, on the contrary, that they were made in good faith, and for an honest purpose. Under such conditions the statute does not contemplate that the owner shall be made to suffer loss because of the negligence of the subcontractors in claiming a lien.

The provision in the contract requiring a certificate of the architects to entitle the contractors to payment was for the protection of the owner, and a departure therefrom by the owner is but a circumstance to be taken into consideration, along with other facts and circumstances of the case, in determining the question of his good faith. Decree affirmed with costs..

*Affirmed.*