P. GRASSI & BRO., INC., Respondent, *v.* LOVISA & PIS-
TORESI, INC., et al., Respondents, and NEW JERSEY
FIDELITY AND PLATE GLASS INSURANCE COMPANY,
Appellant, Impleaded with Others.

(Submitted June 17, 1932; decided July 19, 1932.)

*Raiemond E. Dee* for appellant. Under the contract the Seventy-third Street Corporation was an owner and the Sherman Corporation was a contractor within the meaning of the Lien Law. (*McNulty* v. *Offerman*, 221 N. Y. 103.)

*J. Charles Weschler, Sidney Jarcho, M. Carl Levine* and *Frank W. Harris* for respondents. The Sherman Corporation was an agent for the Seventy-third Street Corporation in making its contracts with the lienors, and was not a contractor within the meaning of the Lien Law. (*McNulty* v. *Offerman*, 221 N. Y. 98.)

KELLOGG, J. Sherman Square Studios Realty Corporation was the owner of premises in New York city known as 160 West Seventy-third street. Henry Cohen was the president of the corporation and its principal stockholder. He conceived a plan for the improvement of the premises by the erection of an apartment house building thereupon. As the first step toward this end Cohen caused a corporation to be organized under the name of 160 West Seventy-third Street Corporation. The certificate of incorporation provided that the capital stock should be $1,051,400; that the board of directors should consist of five members. Of the directors named in the certificate, one was a nephew of Henry Cohen and three others were employees of a firm of attorneys which acted throughout for Cohen and the Sherman Square Studios Realty Corporation. The new corporation was organized without capital paid in, and, for an extended period, issued no stock.

In April, 1928, within two weeks after its organization, 160 West Seventy-third Street Corporation entered into a written contract with Sherman Square Studios Corporation. By this contract the latter corporation agrees to convey to the former the premises 160 West Seventy-third street, with the buildings erected or to be erected thereupon, and the former agrees to purchase the same. Sherman Studios agrees to erect upon the premises an apartment house in accordance with certain plans and specifications. The corporation, 160 West Seventy-third Street, agrees, in consideration of the conveyance of the premises and the erection of the building, to deliver to Sherman Square Studios the entire issue of its capital stock, viz., 10,514 shares of the total par value of $1,051,400. It further agrees to pay over to Sherman Studios the proceeds of all loans, not exceeding $1,051,400, which it may procure through mortgages upon the premises, and to execute and deliver to it all leases of apartments in the building which it might negotiate. Thereafter, on April 9, 1928, Sherman Studios Corporation conveyed to the corporation 160 West Seventy-third Street the premises 160 West Seventy-third street. Thereupon Sherman Studios began the construction of the building.

In the course of construction the corporation, 160 West Seventy-third Street, borrowed more than $900,000, securing the loan with mortgages on the Seventy-third street property. The moneys were paid out in part to cancel underlying mortgages, and the balance was paid to Sherman Studios. In April, 1929, the building was completed, and upon its completion the corporation, 160 West Seventy-third Street, in fulfillment of its contract, issued and delivered to Sherman Studios, or its transferees, 10,514 shares of its stock, representing the entire capital of the corporation.

In the course of the construction, the plaintiff furnished the labor and materials for the plastering; the defendant

Lovisa & Pistoresi the labor and materials for the marble installation; the defendant Jarcho Bros., Inc., the labor and materials for the plumbing. These were furnished to Sherman Studios under contracts made with it. After the corporation, 160 West Seventy-third Street, had paid over its shares of stock to Sherman Studios, and had otherwise complied with its contract, the material-men named filed mechanics' liens against the premises to secure the payment to them of unpaid balances. Subsequently, upon the filing of undertakings, executed by the 160 West Seventy-third Street Corporation as principal and the defendant New Jersey Fidelity and Plate Glass Insurance Company as surety, conditioned for the payment of any judgment which might be recovered in actions to enforce the liens, the Supreme Court made an order discharging the liens. In this action to enforce the claims of the plaintiff and the two materialmen who are defendants, judgment for the full amount of such claims has been granted in their favor.

It is provided in section 3 of the Lien Law (Cons. Laws, ch. 33) as follows: " A contractor, subcontractor, laborer or material man, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or subcontractor, shall have a lien for the principal and interest of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this chapter." It is provided in section 4 as follows: " If labor is performed for, or materials furnished to, a contractor or subcontractor for an improvement, the lien shall not be for a sum greater than the sum earned and unpaid on the contract at the time of filing the notice of lien, and any sum subsequently earned thereon." Obviously the corporation 160 West Seventy-third Street was an owner with whose consent the plaintiff and the two defendant lienors furnished

materials and performed labor for the improvement of the real property of that corporation. Unless, therefore, Sherman Studios was a " contractor," within the meaning of section 4 of the Lien Law, such claimants acquired liens upon the premises for the full amount of their claims. On the other hand, if Sherman Studios were a contractor for 160 West Seventy-third Street Corporation, the claimants acquired no liens, for the reason that the latter corporation, at the time of the filing of the liens, had fully satisfied its contract with the former. The question is, therefore, whether or not Sherman Studios was in truth a " contractor."

" The term ' contractor,' when used in this chapter, means a person who enters into a contract with the owner of real property for the improvement thereof, or with the state or a municipal corporation for a public improvement." (Lien Law, § 2.) " The contractor whom the Lien Law has in view is one who would be so characterized in the common speech of men. He is one who, in the usual course of trade, has undertaken to improve the property of another. If he happens to have some interest in the land himself, his interest is an accident, and not the source and origin and occasion of his action." (Per CARDOZO, J., in *McNulty Bros.* v. *Offerman*, 221 N. Y. 98, 105.) In that case the facts considered were these: The owner of premises, upon which a department store had been erected, leased them to another. The lease contained provisions to the effect that the tenant might make certain alterations in the store of a character specifically described. The tenant agreed to make the alterations and the lessor agreed to contribute a substantial sum toward the performance of the work. The promise of the lessor was conditioned upon the performance of the work in the manner prescribed, and the prompt payment of all installments of rent. Material and labor, with which to make the improvements, were supplied to the tenant

by various persons. At the conclusion of the work these persons, not having been paid in full, filed mechanics' liens against the property. As the tenant had not made the alterations prescribed by the lease, and had not paid the rentals provided for, the lessor was released from the obligation to make contribution, and owed the lessee nothing. Therefore, if the tenant were a contractor, within the meaning of the Lien Law, the liens filed were inoperative. It was held that the lessee was not a contractor, and that the liens bound the property in so far as the improvements made were those consented to by the owner-lessor.

On its face, the agreement between Sherman Studios and 160 West Seventy-third Street Corporation was not a contract between general contractor and owner, for the corporation 160 West Seventy-third Street, when the contract was signed, did not then own the title to the premises; nor was it " a vendee in possession under a contract for the purchase of such real property." (Lien Law, § 2.) Nor was Sherman Studios a person which had entered " into a contract with the owner of real property for the improvement thereof." (Id.) On the contrary, the contract was one between vendor and purchaser, whereby, in addition to conveying the property, the vendor agreed to make improvements thereupon for the benefit and at the expense of the vendee. Thus, when the contract was made Sherman Studios was still the owner, and, since it could not contract with itself, could not have been a general contractor for the improvement. If the statutory definitions, therefore, be strictly interpreted, the property was not exempt from liens filed by those who supplied materials and labor to the vendor. On the other hand, if the statutory words of definition be interpreted according to the spirit and not the letter, then Sherman Studios and 160 West Seventy-third Street stand in worse case. The consideration for the promised conveyance from Sherman Studios to 160

West Seventy-third Street was the promised transfer by the latter to the former of all its capital issue. Thus, the former, the vendor, from being the owner of the legal title was to become the sole stockholder of the latter, the vendee. This metamorphosis, from sole legal owner to sole beneficial owner, changed the complexion of things not a whit. Obviously, the transaction had but one purpose: the creation of a general " contractor " and " owner " within the meaning of the statutory words; thereby to free the real estate from possible liens provided the putative owner, at the conclusion of the work of improvement, owed nothing to the putative contractor. We do not think that by any such subterfuge the Sherman Studios became in truth a general contractor; nor a " contractor " within the meaning of the Lien Law. " Tenants in common, lessor and lessee, vendor and purchaser, all have interests in the land; but when once they have given their consent to an improvement, they cannot by any arrangement among themselves cut off the rights of lienors." (*Mc Nulty Bros.* v. *Offerman, supra,* p. 105.) In the view which we have expressed it is unnecessary to consider whether or not Sherman Studios and 160 West Seventy-third Street Corporation are one and the same person, although masquerading as separate entities under different corporate names.

The judgments should be affirmed, with costs.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgments affirmed.