Calvin L. MOORE, Appellant,

v.

Robert N. AXELROD, et al., Appellees.

Nos. 81–151 and 81–694.

District of Columbia Court of Appeals.

Argued Oct. 28, 1981.

Decided March 18, 1982.

George H. Windsor, Washington, D. C., for appellant.

Martin F. McMahon and Gregory J. Miner, Washington, D. C., for appellees.

Before NEBEKER, PRYOR and BELSON, Associate Judges.

BELSON, Associate Judge:

This is an appeal from an order of the trial court dismissing appellant's suit to enforce mechanic's lien against appellees.[1] It raises the question whether one who agrees to act as manager and broker with respect to residential real property owned by another can at the same time, by furnishing labor and materials for its improvement and repair, acquire the status of a contractor who is entitled to assert a statutory mechanic's lien upon the real property in question. The trial court concluded that "a real estate broker is not a contractor" within the meaning of the mechanic's lien statute[2] and "is not in absence of clear statutory mandate entitled to a mechanic's lien." We disagree, and hold that on the facts as set forth in appellant's verified complaint and affidavit, he is entitled to proceed in the trial court with his action to enforce mechanic's lien.

On July 15, 1977, appellant Moore and appellees Axelrod and Wagner executed a standard form supplied by appellant entitled "Management Agreement." It provided that "the Owner [Axelrod and Wagner] hereby employs the Agent [Moore] exclusively to rent, lease, operate and manage" certain residential real property which consisted of twelve buildings containing 60 apartment units. The agreement went on to set forth the respective duties of the parties with regard to the rental and management of the premises. It also gave appellant the authority "to make or cause to be made and supervise repairs and alterations, and to do decorating on said premises; to purchase supplies and pay all bills therefor," with the further provision that appellant agreed to "secure the prior approval of the owner on all expenditures in excess of $1,000.00 for any one item ...." The agreement specified that appellant would receive 7½% (impliedly of rentals received) for management services, no compensation for leasing the apartments, and a 6% commission in the event of sale. In contrast to those specific provisions for compensation, the agreement indicated that the amount appellees Axelrod and Wagner would pay appellant "For Modernization" was "to be negotiated." Also "to be negotiated" was appellant's compensation "For Fire Restoration," "For Refinancing," and "Other." The written agreement did not expand upon appellant's role in modernizing the apartments.

Appellees Axelrod and Wagner had purchased the property in question from appellees Zimmer and Flippen on July 15, 1977, the same date they entered into their agreement with Moore. Subsequent to the sale, Zimmer and Flippen held a second trust on

---

1. Notice of appeal from the order of dismissal (No. 81–151) was filed on January 14, 1981. On June 17, 1981, appellant filed a notice of appeal (No. 81–694) from the trial court's denial of his motion for reconsideration or stay of the court's order to release the notice of lien or post bond. We ordered the appeals consolidated on October 15, 1981.

2. Mechanic's liens are authorized by D.C.Code 1981, § 38–101, which provides as follows:

   Every building erected, improved, added to, or repaired by the owner or his agent, and the lot of ground on which the same is erected, being all the ground used or intended to be used in connection therewith, or necessary to the use and enjoyment thereof, to the extent of the right, title, and interest, at that time existing, of such owner, whether owner in fee or of a less estate, or lessee for a term of years, or vendee in possession under a contract of sale, shall be subject to a lien in favor of the contractor with such owner or his duly authorized agent for the contract price agreed upon between them, or, in the absence of an express contract, for the reasonable value of the work and materials furnished for and about the erection, construction, improvement, or repair of or addition to such building, or the placing of any engine, machinery, or other thing therein or in connection therewith so as to become a fixture, though capable of being detached: *Provided*, that the person claiming the lien shall file the notice herein prescribed.

the property. On November 2, 1978, Axelrod and Wagner deeded the property back to Zimmer and Flippen, assertedly in lieu of foreclosure.

Appellant filed a notice of intent to file a mechanic's lien against the property pursuant to D.C.Code 1973, § 38–102, on November 9, 1978.[3] On November 5, 1979, he filed a verified complaint in Superior Court seeking to enforce the lien.[4] In it, he alleged that between July 15, 1977, and August 31, 1978, he had supplied materials and labor for the "repair, maintenance and improvement" of appellees' property by virtue of which appellees Axelrod and Wagner were indebted to him in the sum of $121,507.52. Named as defendants in the suit were appellees Axelrod and Wagner as owners at the time material to the allegations, and appellees Zimmer and Flippen as former secured parties and owners of record.

In January, 1980, appellees moved jointly to dismiss appellant's suit.[5] Their motions were accompanied by a statement of material facts as to which they contended there was no genuine issue, and supporting affidavits stating that appellant had not in fact performed the work alleged, that the property had been transferred from Axelrod and Wagner to Zimmer and Flippen prior to appellant's filing notice of the lien, that the notice was not timely filed, and that appellant was not a licensed contractor or mechanic.[6]

Appellant countered with a motion for partial summary judgment in which he sought a ruling that he is entitled to a mechanic's lien against the interest of appellees Axelrod and Wagner prior to conveyance to appellees Zimmer and Flippen. That motion was accompanied by an affidavit of appellant Moore submitted both in support thereof and in opposition to appellees' motion to dismiss. In it, Moore stated that the "arrangement and agreement with Axelrod and Wagner contemplated that the buildings and grounds ... would be upgraded so that the project could be sold at a substantially greater price than Axelrod and Wagner had paid for it," and that "Moore would completely rehabilitate each apartment as it became vacant ...." Moore further stated that he had supplied labor and materials in all 60 apartments and had "completed" 24 apartments.

On December 16, 1980, the court granted appellees' motion to dismiss on the grounds that appellant was not a contractor within the meaning of the mechanic's lien statute, D.C.Code 1973, § 38–101.[7]

We hold that dismissal was inappropriate since the complaint, fairly read, sets forth a cause of action upon which relief can be granted. We also hold that if appellees' motions to dismiss had been treated, as the trial court could have treated them, as motions for summary judgment, it would have been necessary to deny them since there existed genuine issues of material fact as to

3. The 1973 D.C.Code has since been replaced by the 1981 Code. The section numbers in Chapter 1 of Title 38, "Mechanics, Materialmen, and Contractors," remain the same.

4. Previously, appellees Axelrod and Wagner had filed an action in the Superior Court seeking expungement of appellant Moore's notice of intent to file a mechanic's lien, CA 1308078, and an action against Moore for an accounting, CA 1320478, in which Moore filed a counterclaim for a money judgment. Those actions do not figure in this appeal.

5. The statement of material facts and supporting affidavit accompanying appellees Axelrod and Wagner's motion to dismiss were incorporated by reference into appellees Zimmer and Flippen's motion to dismiss.

6. On this appeal, we are not presented with any issue concerning the purported transfer to Zimmer and Flippen, the timeliness of notice of lien, or the claim that plaintiff lacked any necessary license. As to the effect of the transfer, see *Deland v. Wagner*, 62 App.D.C. 54, 64 F.2d 552 (1933). The claim that plaintiff lacked a necessary license was not addressed in appellees' brief, but was mentioned in oral argument. The regulations applicable to home improvement contractors do not apply to work performed in multi-unit apartments such as are involved here. 5Y DCRR § 1.1. There is no showing that appellant was required to take out any other type of license. Therefore, this allegation does not advance appellant's cause.

7. Appellant's motion for partial summary judgment was denied in the same order.

whether appellant had provided labor and materials for the improvement or repair of the property for which he was not compensated.[8]

Our evaluation of appellant's claim begins with a brief review of the nature and purpose of our mechanic's lien statute. The remedy of a mechanic's lien was unknown at common law or equity and is solely a creation of statute. *See James R. Lambie Co. v. Bigelow*, 34 App.D.C. 49 (1909). The statutory remedy has long been recognized in this jurisdiction, as is evidenced by the history of the present statute.[9]

The purpose of the mechanic's lien statute is to provide a remedy to parties who have enhanced the value of property through contributions of labor and materials. *Chamberlin Metal Weather Strip Co. v. Karrick*, 60 App.D.C. 316, 317, 53 F.2d 928, 929 (1931). The theory underlying the statute is that a party who contributes labor and materials which enhance the value of property should be entitled to a preferred

claim upon the property to the extent of his contribution. *James R. Lambie Co. v. Bigelow, supra*, at 55.

Appellant has claimed that he contributed labor and materials which enhanced the value of appellees' property. In his affidavit he asserted that he had completely rehabilitated approximately 24 apartment units and had supplied labor and material in all 60. He specifically claims to have effected substantial improvements such as replacement of heating plants, sinks, stoves, bathtubs, toilets and all electrical fixtures.[10]

Considering appellant's factual allegations in the light of the language and purpose of the statute, it is apparent that his claim that he supplied labor and materials valued at $121,507.52 for the improvement and repair of the properties was sufficient to withstand appellees' motions for dismissal (whether or not treated as motions for summary judgment) unless Moore was somehow disqualified from asserting such a lien because he served as real estate broker

---

8. Superior Court Rule 12(b) provides that if, on a motion seeking dismissal for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. Appellees accompanied their motions to dismiss with affidavits and a statement of material facts as to which they contended there was no genuine issue. If the trial court had considered the factual matters contained in the affidavits, it would have been obliged to rule upon the motions as motions for summary judgment. It appears that the trial court did not consider such factual matters in ruling upon the motions to dismiss.

9. The current statute was preceded by mechanic's lien statutes dating back to the Maryland Act of 1791 which provided for mechanic's liens in what is now the District of Columbia. Maryland Act of 1791, Chapter 45, Section 10.

10. In his affidavit, appellant claims that the parties contemplated that he would do the following in each apartment:

repairing and replacing plaster ceilings and walls;

pointing up or replacing ceramic tiles in the bathrooms;

replacing or repairing all bathroom fixtures, including toilets, washbasins, bathtubs, soap dishes, towel racks;

replacing kitchen floors completely with new plywood underlayment and vinyl asbestos tile with trim;

replacing sinks and stoves;

replacing all electrical fixtures throughout apartments;

replacing electrical outlets and switches;

sanding and refinishing oak floors in living rooms and bedrooms;

replacing mechanical cranks in windows;

replacing broken window panes;

repairing all 60 heating plants;

painting interior and exterior walls (outside walls are brick);

repairing or replacing central fire alarm system;

repair and replace individual apartment front doors and interior doors, including all security hardware;

renew all public hallways, including rubber stair treads;

replacing front main doors to buildings, including hardware;

repair or replace roof sections;

grading, seeding and landscaping of approximately 70,000 square feet of grounds;

pouring new sidewalks;

and other items of improvement and rehabilitation.

Fairly read, his affidavit states that he has effected all of these repairs and improvements, as applicable, in each of 24 units, and has completed some of them in the remaining 36 units.

and property manager for Axelrod and Wagner.

While both the trial court and appellees have made reference to appellant's role as real estate broker, it is clear that the management agreement concerns itself principally with appellant's role as property manager. Appellees' brief concentrates on the alleged incompatibility between the role of property manager and the role of "contractor" under the mechanic's lien statute.

In our view, the roles of real property manager on the one hand and contractor on the other are not mutually exclusive. A person who is serving as property manager for the owner of real property may, at the same time, enter into an understanding with the owner concerning the completion of major repairs or improvements to the same real property. If the parties should enter into contracts concerning both management and improvement, they may do so either in a single agreement or in multiple agreements.[11]

Appellees argue that the mechanic's lien statute makes references to the role of the owner's agent which compel the conclusion that the statute cannot be construed to permit a real estate management agent to have the status of a contractor. As an example, they point out that the statute, D.C.Code 1981, § 38–105, provides that notice by a subcontractor to the owner's agent is notice to the owner. Thus, appellant argues, "[i]f the subcontractor gives his notice [of intention to hold a lien] to the agent for the owner, rather than to the owner, as he is clearly permitted to do, the contractor

of the owner would get the notice destined for the owner." Appellees' brief at 10. Appellees go on to argue that this could lead to the owner's unknowing violation of his statutory duty to retain out of payments becoming due the contractor an amount sufficient to satisfy any indebtedness due the subcontractor by the contractor. Appellees also cite the possibility that a subcontractor, who demands of the owner's agent the terms of the contract under which the work is being done, D.C.Code 1981, § 38–107, might be given false information by the contractor.

Appellees' fears are exaggerated. The answer to them is that the existence of an agency relationship for purposes of rental or management does not necessarily imply the existence of any agency relationship regarding improvements or repairs. To protect his right to enforce a lien, a third party doing work on real property who has reason to believe that the party who arranged for his services may be acting as a contractor rather than as agent of the owner, need only give notice to the owner. Similarly, if he should wish to discover the terms of the contract between the owner and the party who hired him, the subcontractor should make demand of the owner. A subcontractor is put on inquiry with respect to the terms of the contract between the owner and the general contractor. D.C. Code 1981, § 38–107.[12]

Needless to say, status as a real estate broker or property manager does not of itself entitle one to assert a mechanic's lien against an owner's property. That is

11. We note that the management agreement before us contained no provision for the consideration to be paid appellant for modernization. It is not this court's function upon this appeal to make a holding as to whether the agreement contained an express contract concerning improvements. The right to a mechanic's lien is not dependent upon the existence of an express contract. D.C.Code 1981, § 38–101. Although the lien may be founded on a contract, the right to the lien arises immediately when labor is performed and/or materials are furnished as a consequence of which value is added to the structure involved. *Sloane v. Malcolm Price, Inc.*, D.C.App., 339 A.2d 43, 45 (1975).

12. Section 38–107 requires the owner to disclose the terms of the contract between the owner and the general contractor to the subcontractor at the subcontractor's request. The subcontractor therefore is chargeable with notice of the terms and conditions of the prime contract and, in the absence of information to the contrary, the court will assume such notice. *National Brick & Supply Co. v. Baylor*, 112 U.S.App.D.C. 73, 75 n.3, 299 F.2d 454, 456 n.3 (1962); *Winter v. Hazen-Latimer Co.*, 42 App. D.C. 469, 474 (1914).

not to say, however, that one who has that status regarding certain property cannot at the same time make repairs or improvements to that property as a "contractor" within the meaning of the mechanic's lien statute.[13] Whether he does so is a matter of proof. Appellant, in his complaint, adequately alleged that he did so. Thus, dismissal was not warranted. By his affidavit submitted in support of his motion for partial summary judgment and his opposition to appellees' motions to dismiss, appellant successfully joined factual issue with appellees with respect to whether he furnished work and materials. Thus, summary judgment in favor of appellees was inappropriate.

For the above reasons, the ruling of the trial court is reversed and remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

**13.** We have considered the cases relied upon by appellees and cited by the trial court in its order of dismissal, and we conclude that they are not helpful in interpreting the term "contractor" as used in the District of Columbia mechanic's lien statute. In *Deming v. Wardman*, 59 App.D.C. 254, 39 F.2d 504 (1930), the only cited case dealing with the District of Columbia mechanic's lien statute, the Court of Appeals for the District of Columbia held that the status of parties with respect to the lien statute is determined by their status at the time of contracting. Thus, a construction company which contracted with a realty company to repair property could not obtain a lien against the property when the realty company did not own the property at the time the contract was entered into. Nothing in the court's discussion of the parties' status is instructive in interpreting the term "contractor" under the facts of the present case. In *P. Grassi & Bro., Inc. v. Louisa & Pistoresi, Inc.*, 259 N.Y. 417, 182 N.E. 68 (1932), the New York Court of Appeals held that a vendor of property who improved the property pursuant to the terms of the sales contract was not a contractor within the meaning of the New York lien law since, as owner of the property, he could not contract with himself. The court's interpretation of the term "contractor" is not relevant in the present case where appellant was not the vendor of the property against which he is seeking a lien. *Executive House Building Inc. v. Demarest*, 248 So.2d 405 (La.App.1971) dealt with the distinction between general contractors and contractors as these terms were used in the Louisiana lien statute. The importance of the distinction

under Louisiana law lay in the difference in applicable filing requirements. *Savannah and Charleston Railroad Company v. Callahan*, 49 Ga. 506 (1873) interpreted the Georgia Constitution to provide the remedy of a mechanic's or laborer's lien only to the persons who actually performed the labor or furnished the materials with which labor was performed upon property. The lien was held to be not available to "contractors" who employed others to furnish labor or materials. The court's definition of "mechanic" as one whose occupation is to construct "machines, goods, wares ... and the like" and who actually performs such construction has no relevance to our statute which provides the remedy of a mechanic's lien to both general contractors and subcontractors. *People ex rel. Beck v. Board of Alderman*, 42 N.Y.S. 545, 18 Misc.Regs. 533 (1896), dealt with the issue of whether a realtor who had theoretical and practical training in architecture and building construction was a "practical building mechanic" and thus qualified for appointment as a city building inspector. The court held that the term "practical mechanic" as used in the city charter included those persons competent to supervise building construction as well as those who performed manual labor with specialized tools of the trade. Nothing in the court's opinion dealt with the term mechanic as used in a lien statute; the court's discussion of the term dealt exclusively with its meaning in the context of statutory provisions for the qualifications of city building inspectors.